[No. 18777–5–I.   Division One.   October 5, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. EVERETT LEE JORDAN, *Appellant.*

*James E. Lobsenz* and *Wolfe & Cullen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* for respondent.

SCHOLFIELD, C.J.—Everett Lee Jordan appeals his conviction for possession of a controlled substance with intent to deliver.

## FACTS

Jordan was charged by amended information with the crime of possession of cocaine with intent to manufacture or deliver. He was found guilty following a jury trial, and sentenced as a first offender to 90 days' confinement and 24 months' community supervision, including drug and alcohol treatment.

Jordan was traveling near 23rd Avenue East and East Thomas in Seattle around 1:30 a.m. on the morning of August 28, 1985. Seattle police officers Rhoades and Kuenzi observed Jordan driving a motor scooter while wearing dark sunglasses. The officers were concerned because wearing dark glasses at night could be hazardous—to the extent of being negligent driving, or alternatively, because Jordan was wearing the sunglasses below the bridge of his nose, making them inadequate eye protection.

The officers signaled Jordan over, and Officer Kuenzi went to Jordan's vehicle and asked him for his driver's license. Jordan told Kuenzi that he did not have one on him. Kuenzi then apprised Jordan of his *Miranda* rights because Jordan was suspected of driving without a valid license, a misdemeanor. Jordan indicated his willingness to talk to the officer.

Jordan was unable to produce any other identification. In addition, he admitted he was not the owner of the motor scooter. The officers' testimony indicated that a consent search of the vehicle's glove box located a registration in the name of someone other than Jordan. Kuenzi told Jordan that he was technically under arrest for driving without a license until Kuenzi found out otherwise.

Kuenzi then decided to place Jordan in the rear of the patrol vehicle and attempted to verify his identity. Kuenzi told Jordan he wanted to pat him down for weapons, which he did on one side. However, Jordan refused to allow Kuenzi to pat down his other side.

Kuenzi asked Jordan why he would not allow the pat-down and whether it was because his pocket had marijuana in it, and Jordan replied, "'You're not going to get the

marijuana out of this pocket until you take me downtown.'" Kuenzi did not pat down Jordan's other side, but instead, put him in the rear of the patrol vehicle and had Rhoades watch Jordan closely, while Kuenzi requested the assistance of a supervisor.

While they were waiting for the supervisor, Jordan reached into his pocket and pulled out a cigarette containing green matter and attempted to "slough it," that is, put it down between the backseat and the back rest. At that point, Kuenzi handcuffed Jordan and located nine bindles of a white powder in Jordan's pocket. The substance was later determined to be cocaine, with a total weight of approximately 3 grams. Kuenzi asked Jordan if he was selling the cocaine, and Jordan replied, "'Can't find no job.'"

A hearing on Jordan's motion to suppress the cocaine and his statements, pursuant to CrR 3.5 and 3.6, resulted in a denial of these motions. The court found that the original stop was legal, that the arrest was legal, that the search was legal, and that Jordan's statements were voluntary, after a proper advisement of rights.

## VALIDITY OF ARREST
### A. Full Custodial Arrest

Jordan argues that a full custodial arrest for the offense of driving without a valid license violates article 1, section 7 of the Washington Constitution and is contrary to accepted case law.

RCW 46.20.021 reads in pertinent part:

> (1) No person, except as expressly exempted by this chapter, may drive any motor vehicle upon a highway in this state unless the person has a valid driver's license issued under the provisions of this chapter. A violation of this subsection is a misdemeanor . . .

A police officer is permitted to arrest an individual without a warrant for committing a misdemeanor or a gross misdemeanor when that offense is committed in the presence of the officer. *See* RCW 10.31.100.

In *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978), a police officer made a custodial arrest after observing a defective taillight on the defendant's car, and a search incident to arrest produced a controlled substance. Under these circumstances, the *Hehman* court held that:

[A]s a matter of public policy . . . custodial arrest for minor traffic violations is unjustified, unwarranted, and impermissible if the defendant signs the promise to appear as provided in RCW 46.64.015. . . .

The holding stated above is in keeping with the clear spirit of the legislation and with the entire trend of the judicial and legislative philosophy in the field of traffic offenses. There is wide discussion of removing the status of "criminal" from such offenses, which is often referred to as "decriminalization".

*Hehman,* at 47.

An arrest such as the one which occurred in *Hehman* was distinguished from an arrest for driving without a valid license in *State v. McIntosh,* 42 Wn. App. 573, 712 P.2d 319, *review denied,* 105 Wn.2d 1015 (1986). The *McIntosh* court noted that issuance of a citation and then releasing the offending individual is discretionary with the police officer. A citation thus issued has a signature space for the offender to sign to promise to appear. The *McIntosh* court determined that the officer properly exercised his discretion to arrest McIntosh for driving without a valid license because McIntosh had no identification, did not claim to own the vehicle he was driving, and had related a suspicious account of his recent activity. The *McIntosh* court determined that it was reasonable to assume that McIntosh would not respond to a citation if one were issued. *McIntosh,* at 576.

The *McIntosh* court went on to note that the *Hehman* court had recognized that release is not required for those who fail to furnish adequate identification and for those whom the officer has reasonable grounds to believe will disregard the written promise to appear. The *McIntosh* court also noted that *Hehman* was written prior to and in anticipation of the decriminalization of traffic infractions and

that decriminalization left the police with the power of arrest for misdemeanor traffic offenses. *McIntosh,* at 576–77.[1]

■ Comparing the facts in *McIntosh* with those before us, we find that Jordan's arrest for driving without a valid license was valid. Jordan had no driver's license, he had no other identification, and he was driving a vehicle he did not own. Although he did not also give the officers an implausible account of his recent whereabouts, as the defendant did in *McIntosh,* it was reasonable for the officers to believe that Jordan would disregard the written promise to appear on the citation.

### B. Probable Cause

Jordan argues further that, at most, the officers had probable cause to believe that he had committed the civil infraction of driving without his license in his immediate possession.

■ Probable cause to arrest exists if the totality of facts and circumstances known to the police at the time of the arrest would warrant a reasonably cautious person in believing that an offense is being committed. *Watkins v. Department of Licensing,* 33 Wn. App. 853, 658 P.2d 53 (1983). The facts known to the officers at the time of Jordan's arrest were that Jordan was not driving his own vehicle and that he was not satisfactorily able to either prove his identity or prove that he had a valid driver's license.

At the time of the arrest, the officers had no information from the Department of Licensing, so they were entitled to assume, until proven otherwise, that Jordan's failure to produce a driver's license meant that he did not have one. Jordan argues that because he told the officers that he had

---

[1]The *McIntosh* court refers to the misdemeanor of driving without a valid license pursuant to RCW 46.20.021 as "[d]riving without a driver's license on the person", which in reality is a traffic infraction pursuant to RCW 46.20.190, and not an arrestable offense. However, examining the phrase in context, it is clear that the *McIntosh* court meant to refer to the misdemeanor driving without a valid license.

a license at home, the officers only had probable cause to believe he had committed the traffic infraction of failing to have his license in his immediate possession. We disagree. A police officer is not required to believe a suspect's bald assertions. We find that, under the totality of the circumstances, the officers had probable cause to arrest Jordan for the misdemeanor of driving without a valid license.

## SEARCH INCIDENT TO ARREST

Jordan argues that the marijuana–sloughing incident would not have taken place had the officers not attempted to conduct an unjustifiable search, and that had the marijuana incident not occurred, the cocaine would not have been found on Jordan's person. Thus, Jordan argues that the trial court should have granted his motion to suppress the cocaine under the "fruit of the poisonous tree" doctrine first stated in *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). We find this argument unpersuasive. In *Wong Sun,* the events started with an invalid arrest. The discovery of the cocaine on Jordan followed a valid arrest.

Since the police officers had probable cause to arrest Jordan, the search which yielded the cocaine was a valid search incident to arrest. In *McIntosh,* the court held that the search of McIntosh's pockets did not exceed the scope of a search incident to arrest. Noting *United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) (a case involving searches incident to arrests for minor traffic offenses), the *McIntosh* court stated that although a *Terry* patdown had been done without yielding any weapons, this did not preclude an additional search of the arrestee's pockets because that second search was justifiable. The *McIntosh* court quoted *Robinson* as follows:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in

fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, . . .

*McIntosh,* at 578 (quoting *Robinson,* at 235).

Jordan's argument concerns the permissible scope of a search conducted as part of a *Terry* investigative stop (*Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Because we have determined that Jordan was validly arrested for driving without a valid driver's license, his arguments regarding the scope of the search are not pertinent.

Thus, we hold that Jordan's motion to suppress the cocaine found on his person was properly denied by the trial court. The cocaine was found in a search incident to a valid arrest for the criminal traffic offense of driving without a license, and thus was not subject to suppression.

Judgment affirmed.

WILLIAMS, J., and SCHUMACHER, J. Pro Tem., concur.

Review denied by Supreme Court May 5, 1988.