[No. 20847-4-II.    Division Two.    July 10, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. DENISE LOUISE McKENNA, *Appellant*.

*John A. Hays*, for appellant (appointed counsel for appeal).

*James J. Stonier, Prosecuting Attorney*, and *Christopher T. Mahre, Deputy*, for respondent.

MORGAN, J. — Denise McKenna appeals her conviction for possession of methamphetamine. We reverse.

On April 26, 1996, the Cowlitz County Jail was overcrowded. As a result, it was refusing to book anyone arrested for only a nonviolent misdemeanor.

About 2:30 A.M., Officer Coulter,[1] a Kelso police officer, saw a car drive away from what he believed to be a drug house. The car was occupied by a female driver and a male passenger.

Coulter ran a computer check on the car. The results indicated that the car's annual license tabs had expired. Coulter could see, however, that the car had a *current* tab on its rear plate.

Suspecting false tabs, Coulter pulled the car over. After ascertaining that McKenna was the driver, he asked her to produce a driver's license and insurance card. She could not, so he ran a computer check on her and her passenger. The results indicated (a) that McKenna's driver's license was expired; (b) that McKenna did not have insurance; (c) that McKenna was wanted on an arrest warrant issued by the Longview Municipal Court for driving without a valid operator's license; and (d) that the passenger was wanted on a similar warrant.

Because of the jail situation, Coulter did not arrest McKenna or the passenger. Instead, he cited McKenna for not possessing a valid operator's license or proof of insurance. He also told both her and the passenger to take care of their warrants by contacting the Longview Municipal Court.

Once Coulter completed the citations, McKenna and her passenger were "free to go."[2] Their car, however, was not. Sergeant Nelson, Officer Stair and Officer Proco had arrived by this time, and when Sergeant Nelson learned that neither McKenna nor her passenger had a valid driver's license, he ordered that her car be impounded and inventoried. Eventually, the car was searched and towed away.

When McKenna learned that her car was being impounded, she asked if she could retrieve some of the personal items that were in it. The officers agreed, and she loaded a number of items into a duffle bag.

---

[1]The record contains two different spellings of this officer's name. We use the spelling shown in the trial court's findings of fact.

[2]Conclusion of Law 3, Clerk's Papers at 27.

At this point, McKenna lacked transportation, and it was after 2:30 A.M. Officer Stair told her he would call her a cab or give her a ride home in his patrol car. Before she could ride in his patrol car, however, "she would have to submit to a check of her person and bag for weapons."[3] "At this point," according to the trial court's explicit finding, "[McKenna] and her companion were free to leave."[4]

McKenna responded to Stair's statements by agreeing that he could search the duffle bag. As Stair did so, according to the trial court's finding, he was "look[ing] for weapons and . . . illegal drugs."[5] He did not find either, but he did find drug paraphernalia in the nature of a pipe, cigarette wrapping papers, and a small set of scales.

Stair then told McKenna to empty her pockets. She complied by taking "a plastic film canister out of her pocket and plac[ing] it on the car."[6] Stair opened the canister, found methamphetamine, and placed McKenna under arrest for possession of a controlled substance and possession of drug paraphernalia.

On May 1, 1996, the State charged McKenna with illegal possession of a controlled substance, methamphetamine. She moved to suppress, and after a hearing the trial court made several findings and conclusions pertinent here.

First, the court ruled that the search of McKenna's pockets could not be justified by probable cause to arrest for possession of drug paraphernalia. The court's reason, appropriately enough, was that there is no such crime.[7]

Second, the court ruled that the search of McKenna's pockets could not be justified by consent. When McKenna handed the duffle bag to Officer Stair, she was "knowingly and voluntarily consent[ing] to a search of her bag for

---

[3]Finding of Fact 8, Clerk's Papers at 26.

[4]*Id.*

[5]Finding of Fact 9, Clerk's Papers at 26.

[6]Finding of fact 11, Clerk's Papers at 26.

[7]RCW 69.50.412; *State v. Lowrimore*, 67 Wn. App. 949, 959, 841 P.2d 779 (1992).

weapons,"[8] but she was not consenting to a search of her person for weapons or anything else. As a result, McKenna did not "take the plastic film canister out of her pocket as part of [a] consensual search of her person. Rather, she took it out of her pocket upon the order of Officer Stair."[9]

Third, the court ruled that the search of McKenna's pockets could be justified on the ground that it was "a valid search incident to an arrest . . . that Officer Stair *could have* made on the outstanding Longview Municipal Court warrant."[10] It was legally insignificant, the trial court thought, that no such arrest had actually been made. Based on this reasoning, the trial court denied the motion to suppress.

After her motion to suppress had been denied, McKenna stipulated to the facts of the case and submitted to a bench trial. She was convicted, and this appeal followed.

It is undisputed that when Officer Stair ordered McKenna to empty her pockets, he was conducting a warrantless search of her pockets.[11] The trial court implicitly so found, and the State does not assail its findings. The issue, then, is whether Stair's search of McKenna's pockets was justified under the Fourth Amendment to the United States Constitution.[12]

■■ The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." It "prohibits warrantless searches unless the search is justified under an established exception to the warrant

---

[8]Conclusion of Law 4, Clerk's Papers at 27.

[9]Conclusion of Law 6, Clerk's Papers at 27-28.

[10]Conclusion of Law 7, Clerk's Papers at 28. (Emphasis added.)

[11]*Cf. State v. Carner,* 28 Wn. App. 439, 441, 624 P.2d 204 (1981) (finding of fact I-g). The searches of the car and duffle bag are immaterial here, because nothing significant was found.

[12]McKenna also claims a violation of Article I, § 7 of the Washington Constitution, but we do not reach that issue.

requirement."[13] The State bears the burden of proving that a warrantless search falls under an established exception.[14]

Two established exceptions are a search conducted with consent and a search incident to valid arrest.[15] The State does not rely on consent,[16] nor does it assign error to the trial court's finding that McKenna did not consent to a search of her person.[17] The State does, however, argue search incident to a valid arrest.

According to the United States Supreme Court, the search-incident exception has historically involved two questions: (1) May a search be made of the arrestee's person? (2) May a search be made of the area within the arrestee's control?[18]

■ ■ The first of these questions is the one involved here. Without additional cause, an officer may search the person of an arrestee incident to a lawful custodial arrest.[19]

---

[13]*State v. Johnson*, 128 Wn.2d 431, 451, 909 P.2d 293 (1996); *State v. Smith*, 119 Wn.2d 675, 678, 835 P.2d 1025 (1992).

[14]*Johnson*, 128 Wn.2d at 451; *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980); *State v. Jackson*, 82 Wn. App. 594, 601-02 n.15, 918 P.2d 945 (1996), *review denied*, 131 Wn.2d 1006 (1997).

[15]*Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (consent); *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) (search incident); *Smith*, 119 Wn.2d at 678 (search incident).

[16]The State correctly notes that McKenna consented to a search of her duffle bag, but it does not claim that she consented to a search of her person.

[17]As a result, the trial court's finding is a verity on appeal. *State v. Alexander*, 125 Wn.2d 717, 723, 888 P.2d 1169 (1995); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

[18]*Robinson*, 414 U.S. at 224.

[19]*Id.* at 235 (treating all custodial arrests alike for purposes of search justification); *State v. Johnson*, 65 Wn. App. 716, 720-21, 829 P.2d 796 (1992) (upholding search incident to lawful custodial arrest for traffic infraction); *State v. Stortroen*, 53 Wn. App. 654, 659, 769 P.2d 321 (1989) ("[w]here a custodial arrest is not justified, no warrantless search pursuant to that arrest may be upheld"), *overruled on other grounds*, *State v. Reding*, 119 Wn.2d 685, 694, 835 P.2d 1019 (1992); *State v. Jordan*, 50 Wn. App. 170, 175, 747 P.2d 1096 (1988) (upholding search incident to custodial arrest), *review denied*, 110 Wn.2d 1027 (1988); *State v. La-Tourette*, 49 Wn. App. 119, 128, 741 P.2d 1033 (1987) (quoting *Robinson*, 414 U.S. at 235), *review denied*, 109 Wn.2d 1025 (1988); *State v. McIntosh*, 42 Wn. App.

The arrest need not precede the search,[20] but it must be contemporaneous with the search.[21] The officer must have probable cause to arrest before commencing the search,[22] which is also to say that the arrest cannot be justified by the fruits of the search.[23] The reasons for allowing the search are to protect the officer and prevent the destruc-

573, 577, 712 P.2d 319 (upholding search incident to traffic arrest under "the unique facts of this case"), *review denied*, 105 Wn.2d 1015 (1986); *see State v. Hehman*, 90 Wn.2d 45, 47-48, 578 P.2d 527 (1978) (search improper where public policy did not allow custodial arrest); *Gustafson v. Florida*, 414 U.S. 260, 265-66, 94 S. Ct. 488, 38 L. Ed. 2d 456 (1973) (upholding search of person incident to custodial arrest); *Schmerber v. California*, 384 U.S. 757, 772, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (not permissible to search below surface of body in absence of cause to believe weapon or evidence is present).

[20]*Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."); *State v. Smith*, 88 Wn.2d 127, 138, 559 P.2d 970 ("if a warrantless search and seizure is reasonably closely related in time and place to a lawful arrest, the search and seizure may be considered *incidental* to the arrest . . . whether the search and seizure occurs *either before or after the arrest.*"), *cert. denied*, 434 U.S. 876 (1977); *State v. Brooks*, 57 Wn.2d 422, 425, 357 P.2d 735 (1960) ("if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . . there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest") (quoting *People v. Simon*, 45 Cal. 2d 645, 290 P.2d 531, 533 (1955)).

[21]*Rawlings*, 448 U.S. at 111 (immaterial whether search preceded arrest, or arrest preceded search, given circumstances "[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person"); *Smith*, 119 Wn.2d at 679 (search can be incident to arrest "only if the two are contemporaneous"); *Smith*, 88 Wn.2d at 138 (search may be incident to lawful arrest, regardless of which comes first, if search and arrest are "reasonably closely related in time and place"); *State v. Boyce*, 52 Wn. App. 274, 278-79, 758 P.2d 1017 (1988); *see United States v. Chadwick*, 433 U.S. 1, 15-16, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) (search of footlocker not incident to arrest where search and arrest occurred "more than an hour" apart), *overruled on other grounds*, *California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991).

[22]*Rawlings*, 448 U.S. at 111; *Brooks*, 57 Wn.2d at 425 ("if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . . there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest") (quoting *Simon*, 45 Cal. 2d at 645).

[23]*Smith v. Ohio*, 494 U.S. 541, 543, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990) (" 'justify[ing] the arrest by the search and at the same time . . . the search by the arrest,' just 'will not do.' ") (alterations in original) (quoting *Johnson v. United States*, 333 U.S. 10, 16-17, 68 S. Ct. 367, 92 L. Ed. 2d 436 (1948)); *State v. Valdez*, 5 Neb. App. 506, 562 N.W.2d 64, 74 (1997) ("It does not matter that a de-

tion of evidence,[24] or, put another way, to find and control weapons and evidence that might be on the person of the arrestee. It is thought that while the officer transports the arrestee to jail, the arrestee will have both motive and opportunity to use any weapon that might be on his or her person, and also to destroy any evidence that might be on his or her person.

■ Although an officer may search incident to a lawful custodial arrest, he or she may not search incident to a lawful *non*custodial arrest.[25] It is thought that the officer and arrestee will be in close proximity for only a few minutes, and the arrestee, who is about to be released anyway, will have little motivation to use a weapon or destroy evidence. The officer may pat the arrestee for weapons if he or she reasonably suspects the arrestee is armed.[26]

■ The right to search incident to a lawful custodial ar-

fendant is not formally placed under arrest until after a search, so long as the fruits of the search are not necessary to support the cause to arrest.").

[24]*New York v. Belton*, 453 U.S. 454, 457, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (quoting *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)); *Robinson*, 414 U.S. at 226; *Gustafson*, 414 U.S. at 264; *see* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 5.2(g), at 91 (3d ed. 1996); *Johnson*, 128 Wn.2d at 447; *State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986).

[25]*State v. Feller*, 60 Wn. App. 678, 680-81, 806 P.2d 776 (arrest and search improper when based solely on driver's not having valid license), *review denied*, 117 Wn.2d 1005 (1991); *State v. Barajas*, 57 Wn. App. 556, 560, 789 P.2d 321 (same), *review denied*, 115 Wn.2d 1006 (1990); *State v. Watson*, 56 Wn. App. 665, 667-68, 784 P.2d 1294 (search improper where law required that arrest be noncustodial), *review denied*, 114 Wn.2d 1028 (1990); *Stortroen*, 53 Wn. App. at 659 ("[w]here a custodial arrest is not justified, no warrantless search pursuant to that arrest may be upheld"); *see Gustafson*, 414 U.S. at 266 (Stewart, J., concurring) (petitioner might have made, but did not make, "a persuasive claim . . . that the custodial arrest . . . for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments"); *State v. Larson*, 88 Wn. App. 849, 852, 946 P.2d 1212 (1997); *McIntosh*, 42 Wn. App. at 577; *cf. Hehman*, 90 Wn.2d at 47 (as matter of Washington's public policy, search improper where law required that arrest be noncustodial); *see* LaFAVE § 5.2(g), at 91, § 5.2(h), at 95-96.

[26]*Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (permitting "reasonable search for weapons" when officer "has reason to believe that he is dealing with an armed and dangerous individual"); *Feller*, 60 Wn. App. at 681-82 (permitting pat down for weapons "when an officer has reasonable grounds to believe the person is armed and presently dangerous"); *see Robinson*, 414 U.S. at 227-28; LaFAVE § 5.2(h), at 94-96.

rest, once acquired, terminates no later than when the officer announces that the arrestee will be released rather than booked.[27] Thereafter, the situation is the same as a noncustodial arrest, in that the arrestee will have little motivation to use a weapon or destroy evidence, and the officer will have little need to conduct a full search of the person. The officer may still pat for weapons if he or she reasonably suspects that the arrestee/releasee is armed.[28]

In this case, Coulter arrested McKenna, and Stair did also. Our task is to analyze whether either arrest supports Stair's search of McKenna's pockets under the principles just set forth. We begin with Coulter's arrest.

■ ■ Coulter's arrest of McKenna will not support Stair's search of McKenna's pockets for at least two reasons. First, it was noncustodial. Coulter knew the jail situation, and, because of it, he never formed an intent, much less manifested an intent, to arrest McKenna custodially. Perhaps this is best illustrated by the fact that after he learned of the outstanding warrants, he told both McKenna and her passenger to contact the municipal court on their own.

Second, Coulter's arrest of McKenna terminated before Stair searched McKenna's pockets. It is virtually undisputed, based on the officers' intent and also their objective manifestations, that McKenna was free to go once Coulter finished writing citations. Indeed, Stair was *offering to give her a ride home* when he suggested that he search her bag and her person. Even if Coulter's arrest could somehow be considered custodial, so that it could support a search-incident at some earlier point in time, it cannot support a

---

[27]*State v. Carner*, 28 Wn. App. 439, 445, 624 P.2d 204 (1981) (justification for search-incident ends when decision to release is made and manifested); *State v. Lewis*, 611 A.2d 69, 70 (Me. 1992); LaFave, § 5.2(h), at 95 n.142; *cf. State v. Brantigan*, 59 Wn. App. 481, 485, 798 P.2d 1176 (1990) (search of arrestee's person upheld as incident to lawful custodial arrest where evidence did not show that officer had released arrestee before making challenged search).

[28]*Terry v. Ohio*, 392 U.S. at 27; *Feller*, 60 Wn. App. at 681-82; *see Robinson*, 414 U.S. at 227-28; LaFave § 5.2(h), 94-96.

search-incident after McKenna had been told she was free to go.

■ Likewise, Stair's arrest of McKenna will not support a search-incident because it was based only on the fruits of the search itself. The drug paraphernalia in the duffle bag did not give cause to arrest, because mere possession of drug paraphernalia is not a crime.[29] Like Coulter, Stair knew the jail was overcrowded, and that the officers were not going to arrest McKenna custodially, outstanding warrants notwithstanding. The record is devoid of any other reason to arrest, except the methamphetamine that was the fruit of the challenged search, and that may not be used to justify the challenged search.

■ If we perceive correctly, the dissent does not dispute that Coulter's arrest ended when McKenna was told she could go. Nor does it dispute that Stair's arrest was based solely on the fruits of the disputed search. It reasons, however, (1) that the officers *could have* arrested McKenna on warrants, and (2) that what they *could have* done, as opposed to what they *did* do, makes Stair's search of McKenna's pockets a search incident to arrest. This reasoning is erroneous because, according to both the United States Supreme Court and the Washington Supreme Court, a search can be incident to arrest only when the search and arrest are reasonably contemporaneous.[30] When they are, it does not matter which comes first,[31] but when they are not, the search is not incident to the arrest.[32]

The State relies on *State v. Brantigan*.[33] Its reliance,

---

[29]RCW 69.50.412; *Lowrimore*, 67 Wn. App. at 959.

[30]*Rawlings*, 448 U.S. at 111; *Smith*, 119 Wn.2d at 679; *Smith*, 88 Wn.2d at 138; *Boyce*, 52 Wn. App. at 278-79; *see United States v. Chadwick*, 433 U.S. at 15-16 (search of footlocker not incident to arrest where search and arrest were separated by "more than an hour," and thus not contemporaneous).

[31]*E.g., Rawlings*, 448 U.S. at 111.

[32]*Eg., Boyce*, 52 Wn. App. at 279.

[33]59 Wn. App. 481, 798 P.2d 1176 (1990).

however, is misplaced. If *Brantigan* is good law,[34] it stands at most for two propositions: (1) An arrest will be treated as custodial where the officer (a) had probable cause to make a custodial arrest; (b) announced the arrestee was under arrest; but (c) failed to announce whether the arrest was custodial or noncustodial. (2) An otherwise lawful custodial arrest will support a search incident to it, provided that the evidence does not show an unconditional decision to release prior to the officer's making the search. Neither of these propositions is helpful here, where the custodial/noncustodial nature of the various arrests is plain, and where the uncontroverted evidence shows that Coulter, Stair and the other officers released McKenna and her passenger well before Stair searched McKenna's pockets.

Although we decline to rely on *Brantigan*, nothing herein means that a trial court must suppress evidence when an officer (a) arrests a defendant with probable cause to make a custodial arrest; (b) conducts a search contemporaneous with the arrest; but (c) for objectively manifested reasons arising after the search (e.g., being called to another, more pressing emergency), does not actually take the defendant into custody. We have no occasion to consider such a situation in deciding this case.

Summarizing, we hold that Officer Coulter's arrest did not justify the challenged search because it was noncustodial, and because it ended before the challenged search occurred. We hold that Officer Stair's arrest did not justify the challenged search because it had no basis except the fruits of the challenged search. The dissent notwithstanding, the fact that an arrest could have been made, but was not made, is immaterial; what is material is the fact that the challenged search was not accompanied by a contemporaneous arrest (except the arrest based on the fruits of the challenged search, which cannot be used to justify the chal-

---

[34]The *Brantigan* court's assertion that the officer had probable cause to make a custodial arrest is of dubious validity. The officer arrested for possession of drug paraphernalia, and that was not a crime at the time, at least under state law. RCW 60.50.412; *Lowrimore*, 67 Wn. App. at 959. It is possible, we suppose, that possession of drug paraphernalia was a crime under some local ordinance.

lenged search).[35] The motion to suppress was well taken, and McKenna's conviction is hereby reversed.

SEINFELD, J., concurs.

HUNT, J. (dissenting) — I disagree with the majority's assertion that "Stair's arrest was based solely on the fruits of the disputed search" and that "the challenged search was not accompanied by a contemporaneous arrest." I would affirm the trial court's ruling that because the police had justification to arrest McKenna independent of the seized methamphetamine, the search was valid as incident to arrest. Officer Stair believed that he had three grounds for arrest: (1) possession of drug paraphernalia; (2) an outstanding arrest warrant in connection with a previous driving without an operator's license offense; and (3) a new driving without an operator's license offense, coupled with her previous failure to appear. Although the first ground was not valid, the second and third grounds were. I respectfully dissent.

## A. Consent to Search For Weapons

The facts support the trial court's conclusion that McKenna voluntarily consented to the officer's search for weapons as a condition to accepting a ride home in the police car. She could have withheld consent merely by declining the ride and accepting the offer to call a taxicab.[36] Instead she chose[37] to ride with Officer Stair, with the understanding that she would be subject to a weapons search.

---

[35]*Smith v. Ohio*, 494 U.S. at 543; *State v. Valdez*, 562 N.W.2d at 74.

[36]It is irrelevant that there was no written police department policy requiring a weapons search of a passenger prior to transport in a police vehicle. Such a search is prudent police practice, always undertaken by Officer Stair.

[37]McKenna argues that by towing her car, the police put her in a coercive situation in which she had no choice but to accept the ride. McKenna placed herself in the situation by driving without a license, in a vehicle without valid registration and insurance. Allowing McKenna or her unlicensed passenger to drive home would have broken the law. We note that McKenna's outstanding arrest warrant was for a previous incident of driving without a license.

I agree with the majority that once Officer Stair determined McKenna had no weapons in her bag, his authority to search *based upon consent* ended. But during this consensual search, he found drug paraphernalia (marijuana pipe, small scale, cigarette rolling papers) in the bag into which she had placed items from her car in preparation for its impoundment. At that point, Stair planned to arrest McKenna for possession of drug paraphernalia. I agree with the majority that Stair did not plan to incarcerate McKenna for possession of drug paraphernalia because he believed the jail would refuse a nonviolent offender. But he did plan to take her into custody for transport to the jail for booking.

## B. Search Incident to Arrest

Suspecting that McKenna might be in possession of drugs, presumably capable of being ingested using the paraphernalia, Stair requested that she empty her pockets, disgorging the film canister. He opened the canister looking for drugs, found suspected methamphetamine, advised McKenna that she was under arrest for violation of the Uniform Controlled Substances Act, RCW 69.50,—possession of drug paraphernalia *and* possession of methamphetamine, handcuffed her, and transported her to jail.

A case in point is *State v. Brantigan*, 59 Wn. App. 481, 798 P.2d 1176 (1990). A police officer stopped Brantigan for littering early one morning and shined a flashlight into his car. The officer observed a spoon containing liquid and white powder and a beer can fashioned into a pipe; he arrested Brantigan for possession of drug paraphernalia. During the subsequent patdown, the officer discovered two packets of suspected cocaine in Brantigan's pocket. The officer testified that he would have released Brantigan on the paraphernalia offense had he not found the cocaine. Brantigan thus argued that the search was invalid because it was not pursuant to a custodial arrest.

Citing *State v. Henneke*, 78 Wn.2d 147, 149-50, 470 P.2d 176 (1970), the court reiterated that

the justification for allowing a warrantless search incident to arrest is to uncover fruits of the crime involved, to thwart destruction of evidence and/or to discover and seize weapons or other instruments which could be used to assault the arresting officers or to effect an escape. . . . [T]his rationale applies to arrests for misdemeanors committed in the presence of the officer and that evidence seized incident to the arrest could be used in the prosecution for a crime other than the one which engendered the original arrest.

*Brantigan,* 59 Wn. App. at 484.

Division One rejected Brantigan's assertion that the element of "custody" was missing because the officer had a subjective intent to release him with a misdemeanor citation had he not discovered the cocaine. Citing *State v. Brooks,* 57 Wn.2d 422, 425-26, 357 P.2d 735 (1960) and *People v. Simon,* 45 Cal. 2d 645, 290 P.2d 531 (1955), Division One noted,

if an officer has probable cause to make an arrest based on the information available to him *before* he searches, there is nothing unreasonable in his conduct if he conducts the search prior to instead of after the arrest, as long as the scope of the search does not exceed that justified as incident to the arrest.

*Brantigan,* 59 Wn. App. at 484-85 (emphasis added). The court held: "It is irrelevant whether the formal arrest or the search precedes where probable cause exists to arrest at the time of the search. *It should matter even less what the officer's subjective state of mind is when probable cause to support a custodial arrest exists at the time of the search* . . . ." *Id.* at 486 (emphasis added).

It was *Brantigan* upon which the trial court relied in denying McKenna's motion to suppress. *Accord State v. Smith,* 88 Wn.2d 127, 559 P.2d 970 (1977).

"[I]f the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . . there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest."

*Brooks*, 57 Wn.2d at 425 (quoting *Simon*, 290 P.2d at 533).

I agree with the trial court that the search of McKenna's jacket pocket and canister were valid as incident to a lawful arrest because the officers had authority to arrest McKenna on her outstanding warrant. Moreover, Stair "absolutely" believed he had *probable cause* to arrest McKenna on three grounds: (1) on the warrant; (2) for driving without a license, coupled with other facts;[38] and (3) for possession of "drug paraphernalia that [might have been] used to ingest drugs." At the point he found the drug paraphernalia, Stair "made a decision to place her in custody and take her to the . . . Kelso police station, despite the fact that she would not have been booked into the jail . . . ." Not only did Officer Stair intend to take McKenna into custody *before* finding the drugs, even if he had not so intended, his state of mind was irrelevant under *Brantigan*, so long as he had lawful authority, as he did here, under the outstanding arrest warrant.

Even if Stair was mistaken in his belief that he had probable cause to arrest for possession of drug paraphernalia, such mistake did not render his search unlawful. If an officer believes he has probable cause to arrest for one crime, but in fact does not, the arrest is still valid as long as there existed probable cause to arrest for another crime. *State v. Huff*, 64 Wn. App. 641, 646, 826 P.2d 698 (1992). "[A]n arrest supported by probable cause is not made unlawful by an officer's subjective reliance on . . . an offense different from the one for which probable cause exists." *Huff*, 64 Wn. App. at 646 (citations omitted).

I would affirm the trial court's Conclusion of Law 8 that Stair's mistaken reliance on probable cause to arrest McKenna for paraphernalia possession does not automatically invalidate the search incident to arrest. I would also affirm

---

[38]*See State v. Watson*, 56 Wn. App. 665, 784 P. 2d 1294 (1990) (although driving without a valid license is not by itself grounds for custodial arrest, it can be if other circumstances were present). Here such other circumstances included the arrest warrant for the same offense; an additional arrest warrant for McKenna's passenger, who also lacked a valid license; no automobile insurance; the presence of drug paraphernalis in her possession.

the trial court's Conclusion of Law 7 that "Stair's search of the plastic film canister is legally justifiable solely upon the basis that it constituted a valid search incident to an arrest of the defendant's person that Officer Stair could have made on the outstanding Longview Municipal Court Warrant pursuant to *State v. Bran[t]igan* . . . ."

I agree with the trial court and disagree with the majority: There is justification for McKenna's arrest on grounds other than the fruits of the search. *See Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) (where formal arrest followed quickly on the heels of the challenged search, it is not important which came first, so long as the fruits were not necessary to support probable cause). Even if Stair did not have probable cause to arrest McKenna for possession of paraphernalia,[39] he had alternate, independent, valid grounds for arrest—driving without a valid license, a misdemeanor under RCW 46.20.021(1), and the outstanding arrest warrant. Stair was "entitled to make an arrest on the basis of information available to him[,]" namely the arrest warrant or the

---

[39]*See State v. Lowrimore*, 67 Wn. App. 949, 959-60, 841 P.2d 779 (1992):

Once the officer found the drug paraphernalia in the purse, he had probable cause to arrest for violation of RCW 69.50.412. RCW 69.50.412 does not, ipso facto, make possession of drug paraphernalia a crime. The statute does, however, criminalize the use of drug paraphernalia to, inter alia, "ingest, inhale, or otherwise introduce" a controlled substance into the body . . . . Former distinctions and uncertainties as to the scope of a search incident to arrest of various containers such as purses, briefcases and backpacks once they were in the officer's control, have been eliminated by *State v. Smith*, 119 Wn.2d 675, 681, 835 P.2d 1025 (1992), in which the court stated the rule as follows:

An object is, therefore, within the control of an arrestee for the purposes of a search incident to an arrest as long as the object was within the arrestee's reach immediately prior to, or at the moment of, the arrest.

No exigent circumstances are required for such search, nor is the subjective intent of the officer controlling. If, as a matter of fact, there were grounds justifying the search, the evidence need not be suppressed because the officer was unclear or even acted on an incorrect basis. Under the circumstances, it is also immaterial whether the search took place immediately before the arrest or immediately following the arrest. Accordingly, the search of the pouch was justified as incident to the arrest of Lowrimore for possession of drug paraphernalia in what, at that point, became a criminal investigation.

(Footnotes omitted.)

license violation, before he began the search. *See Brooks*, 57 Wn.2d at 425. Because Stair had probable cause and authority to arrest McKenna before the search, the search was valid as incident to her "contemporaneous" arrest.

This case is distinguishable from *State v. Carner*, 28 Wn. App. 439, 624 P.2d 204 (1981). In *Carner* we found the search of a juvenile defendant, after officers decided to release him to his mother, could not be justified as incident to arrest. We stated:

> The crucial finding is that before Officer Bens conducted the challenged search, the officers had determined that the defendant would not be detained, but released to his mother . . . . There was no danger of weapons, or that he might possess evidence relevant to the crime for which he was arrested. The further danger that the defendant might possess items which would aid in his escape or carry contraband or drugs to his jailmates would exist only if the police intended to detain him. Once the administrative decision was made to release him without further detention, these dangers ceased to exist and gave the police no reasonable basis for a detailed body search . . . .
>
> . . . .
>
> . . . We conclude the trial court was correct in determining that once defendant's juvenile status was determined and a decision to release him made, any further intrusion on the privacy of his person in addition to those already made was unreasonable and not necessitated by any exigencies which further detention might have required.

*Carner*, 28 Wn. App. at 445 (citations omitted).[40]

Here, although McKenna's initial detention had ended, Stair's search of her bag was a consensual precondition to her ride home in the police car. Moreover, in *Carner* there was no second and independent basis for arrest, as there was here with McKenna's outstanding arrest warrant and

---

[40]We also noted that the final search was motivated, not by standard police procedures, but by the officer's anger at Carner's comments. *Carner*, 28 Wn. App. at 445-46.

operator's license violation. As explained above, although search of the film canister exceeded the scope of the consensual weapons search, it was nevertheless valid as incident to a warrant-authorized arrest or an arrest based on probable cause independent of and before the search which revealed the methamphetamine.

Several cases from other jurisdictions have reached the same conclusion under similar circumstances. In *State v. Valdez*, 5 Neb. App. 506, 562 N.W.2d 64 (1997), police officers searched a residence pursuant to a valid search warrant. The court upheld a prearrest search of Valdez's person as incident to arrest.

> It has been held that a search incident to an arrest can be made prior to an arrest as long as probable cause for the arrest exists prior to the search. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990). *It does not matter that a defendant is not formally placed under arrest until after a search, so long as the fruits of the search are not necessary to support the cause to arrest.* [*Roach*, 452 N.W.2d 262].

*Valdez*, 562 N.W.2d at 74 (emphasis added).

In *Valdez* the supporting search warrant affidavit provided sufficient probable cause to arrest, independent of the cocaine found in Valdez's pocket. Similarly, McKenna's arrest warrant provided alternative authority for her arrest, independent of and prior to discovery of methamphetamine in her pocket. *Valdez*, 562 N.W.2d at 74-75. Just as the court in *Valdez* found the search of Valdez to be incident to arrest, the officer's search of McKenna should be similarly characterized as a valid search incident to arrest.

In another case, *Hoag v. State*, 791 S.W.2d 342 (Tex. Crim. App. 1990), the defendant challenged the seizure of a baggy of cocaine found on his person. Before seizing the baggy, the officers had run a warrant check and discovered that Hoag had an outstanding arrest warrant. The court found that the seizure was legal based on the baggy's appearance and the officers' knowledge of high narcotic activ-

ity at the location. The court determined that, alternatively, Hoag could have been arrested on the warrant, booked, and searched; thus the baggy inevitably would have been discovered.[41] *Hoag*, 791 S.W.2d at 344-45.[42] *See also United States v. Green*, 111 F.3d 515 (7th Cir.) (discovery of an outstanding warrant removed the taint of an illegal stop, and therefore made what might have been an illegal search a valid search incident to arrest), *cert. denied*, 522 U.S. 973, 118 S. Ct. 427, 139 L. Ed. 2d 328 (1997); *Ruffin v. State*, 201 Ga. App. 792, 412 S.E.2d 850 (1991) (discovery of outstanding arrest warrant attenuated the connection between the illegal stop and the search incident to arrest); *State v. Cook*, 530 N.W.2d 728 (Iowa 1995) (statute allowing officer to issue citation in lieu of arrest does not affect officer's authority to conduct an otherwise lawful search of person incident to citation for failure to wear a seat belt).

Perhaps the closest case in point is the Second Circuit Court of Appeals decision in *United States v. Ricard*, 563 F.2d 45 (2d Cir. 1977). Police stopped Ricard's car for speeding. As he reached into his pocket for identification, the officer observed a tin foil packet. With no previous suspicion that Ricard was involved in illegal drugs, the officer became suspicious, removed the packet from Ricard's pocket, opened the packet, and found a white powder, later identified as cocaine. The officer then arrested Ricard for drug possession and took him to the police station. There it was discovered that Ricard was also in possession of stolen money orders. The court found that there was sufficient cause for the officer to seize the packet of cocaine as a product of a valid search incident to an arrest for speeding, an arrestable offense under New Jersey law; it was irrelevant that the officer had chosen not to arrest Ricard for speeding:

---

[41]Here, it was Officer Coulter, not Officer Stair, who made the initial stop and the initial determination to release McKenna.

[42]In *Hoag*, the court based its decision on the fact that Hoag *would* have been arrested on the warrant anyway. Here, the officer intended to take McKenna into custody to be processed at the jail, even though the jail probably would not have kept her incarcerated because it lacked space for nonviolent offenders.

[T]he fact that Kelleher had *cause to arrest* appellant for speeding, even if he initially determined not to do so, *was a sufficient predicate for a full search. United States v. Jenkins*, 496 F.2d 57, 72-73 (2d. Cir. 1974) . . . *United States v. Riggs*, 474 F.2d 699, 702 (2d Cir. [1973]) . . . . As Judge Mansfield stated in *Jenkins*,

> "The mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search . . . . Any other holding would, without rational basis, exalt form over substance."

*Ricard*, 563 F.2d at 49 (emphasis added) (alteration in original).[43] As William B. Ringel summarizes *Ricard*, "if the statutory authority exists for a custodial arrest, it is not important whether the officer actually makes a decision to take the arrestee into custody before conducting the search. *As long as the officer could have taken the arrestee into custody, the search is permissible.*" 1 WILLIAM B. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS, *"Custodial" Arrests*, § 12.3(b), at 12-12 (1979) (emphasis added).

In short, as explained by Justice Harlan in his concurring opinion in *Sibron v. New York*, 392 U.S. 40, 76, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968),

> If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, "Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards."

*Sibron*, 392 U.S. at 77.

As further explained in *Rawlings*,

> Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it

---

[43]The "noncustodial arrest" cases cited by the majority in note 25 are inapposite; the cases cited in note 27 are distinguishable because they do not involve independent valid alternative bases for arrest, such as the arrest warrant here; nor do they involve nonarrest related transport in a police vehicle.

particularly important that the search preceded the arrest rather than vice versa [so long as the fruits of the search were not necessary to support probable cause to arrest].

*Rawlings*, 448 U.S. at 111 (citations omitted). *See* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 5.4(a), at 154-55 (3d ed 1996).

LAFAVE urges that

At a minimum, *Cupp*[44] should be applied so as to permit, when there are grounds upon which a formal arrest could have been made, a more extensive search for any evidence reasonably believed to be in the possession of the suspect which might be unavailable later . . . . [I]t is to be doubted that *Cupp* must be limited to situations where the evidence is literally "highly evanescent"; [citing as illustrative, *Franklin v. State*, 18 Md. App. 651, 308 A.2d 752 (1973).]

*Id.* at 157-58 (footnote omitted).

I would follow LAFAVE, *Ricard, Brantigan,* and the cases that they cite. I would hold that McKenna's outstanding arrest warrant and/or driving without a license provided independent probable cause to support Officer Stair's search incident to his contemporaneous arrest of McKenna and seizure of the methamphetamine, regardless of his subjective belief about whether he could legally arrest for possession of drug paraphernalia and regardless of the timing of his formally placing McKenna under arrest. I would affirm.

---

[44]*Cupp v. Murphy*, 412 U.S. 291, 93 S. Ct. 2000, 36 L. Ed. 2d (1973).