

## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 76561-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KUN KI KIM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 11, 2018 |

SPEARMAN, J. — A police officer must have probable cause to make a warrantless arrest. Probable cause exists when the facts and circumstances would cause a reasonable officer to believe a crime has been committed.

An officer arrested Kun Ki Kim for possession of drug paraphernalia in violation of RCW 69.50.412(1). The officer searched Kim incident to arrest and discovered heroin. Kim challenges his conviction for possession of a controlled substance, arguing that the officer did not have probable cause and the search was thus improper. But the facts and circumstances were such that they would cause a reasonable officer to believe that Kim possessed drug paraphernalia for one of the uses prohibited in RCW 69.50.412(1). We affirm.

## FACTS

Officer Nathan Wallace was on patrol when he observed a van parked opposite a house known for drug sales. The van was in a commercial parking lot

but in the area farthest from the businesses. In Wallace's experience, drug users commonly parked there when obtaining drugs from the house across the alley.

Wallace parked his patrol car near the van. He approached the van and greeted its occupants. Kim was in the passenger seat and Brenda Laizure was in the driver's seat. Wallace recognized Kim and Laizure from prior contacts involving drugs. He knew Kim to be a drug user. Wallace initiated a brief conversation and expressed his concern about the van's location. Kim and Laizure denied parking there to visit the drug house. They told Wallace they had met by chance and were catching up on old times. Laizure told Wallace she was sober. Wallace informed Kim and Laizure that the trip permit on the van was filled out incorrectly. He did not see any contraband or anything else of note and began to leave.

As Wallace was returning to his car he heard a noise and glanced back. He saw Kim open the door and get out. Kim reached under his seat, removed a small square baggie, and put it in his pocket. Wallace recognized the baggie as a type generally used for drugs. He placed Kim under arrest for possession of drug paraphernalia. In a search incident to arrest, he examined the baggie and determined that it contained heroin. Kim was charged with possession of a controlled substance, heroin.

Prior to trial, Kim moved to suppress evidence of the heroin, arguing that Wallace lacked probable cause to arrest him and the evidence was thus the product of an unlawful search. Following a hearing, the trial court entered twelve findings as to the facts surrounding Kim's arrest. In light of these facts, the court

concluded that the arrest was supported by probable cause and denied Kim's motion. Kim was convicted as charged. He appeals.

DISCUSSION

Kim challenges three of the trial court's findings of fact and its conclusion that the arrest was supported by probable cause. We review to determine whether the trial court's findings of fact are supported by substantial evidence and, if so, whether the findings support the conclusions of law. State v. Vickers, 148 Wn.2d 91, 116, 59 P.3d 58 (2002) (citing Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993)). Evidence is substantial when it is sufficient to persuade a rational fair-minded person. Id. (citing State v. Mendez, 137 Wn.2d 208. 214, 970 P.2d 722 (1999)). Unchallenged findings are verities on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

In this case, the trial court found that Wallace observed the van in an area known for drug sales, recognized Kim and Laizure from prior contacts involving drugs, saw Kim get out of the van, and watched Kim remove a small black baggie from under the front passenger seat and put it in his pocket. Kim does not challenge these findings. They are verities on appeal. Kim challenges findings 8, 11, and 12, which concern Wallace's recognition of the baggie:

> 8. Based on his training and experience the Officer recognized the baggie as something commonly used to contain illegal controlled substances.
> . . .
> 11. Evidence that the baggie is used for the storage of drugs in uncontroverted. The black baggie is small in size, approximately one to two inch square. The baggie has a distinctive black and gold

3

skull pattern and is opaque, concealing the contents. There was no way for the officer to see or know what was inside the baggie.

12. The Officer testified he sees these baggies every day and is familiar with them through his experience. The Officer was able to recognize the baggie on sight as one used as drug paraphernalia.

Clerk's Papers (CP) at 76. Kim asserts that the trial court found that Wallace recognized the precise skull pattern on the baggie, a finding that he argues is unsupported.

Kim misconstrues the challenged findings. The trial court did not find that Wallace specifically recognized the skull pattern or that he believed the baggie was used for drugs based on that pattern. In findings 8 and 12, the trial court found that Wallace, based on his training and experience, "recognized the baggie as something commonly used to contain" drugs. In finding 11, the court described the baggie found in Kim's possession. Id.

At the suppression hearing, Wallace testified that he saw Kim take "what appeared to be a drug baggie" from under his seat and put it in his pocket. Verbatim Report of Proceedings (VRP) at 12. The prosecutor and Wallace had the following exchange:

Q. When you say "a drug baggie," what do you mean by that?
A. Drugs are commonly packaged in these one-by-one semi-clear baggies, usually have designs on them. I've seen these almost every day that I've been a police officer working that area.
Q. Those types of baggies, is that something that you have been trained on through your training that you mentioned, the refresher courses?
A. Yes.
Q. And you say that you've seen them almost every day. I'm going to actually hand you what's been marked as State's Exhibit 1.
. . .
Q: Do you recognize what that's a photo of?
A. Yes.

4

Q. And what is it?

A. The baggie.

Q. Is that – you mentioned that you see these baggies every day. Is this generally what they look like?

A. Yeah. Sometimes the designs change, but that's what they look like.

Q. And what are these types of baggies generally used for by individuals?

A. For the packaging of drugs.

Q. Okay. So at this point, you see Mr. Kim exit the vehicle. He grabs some baggie. What did you observe next?

A. Then I closed the distance and detained him.

Q. Did you see what Mr. Kim did with the baggie prior to detaining him?

A. He put it in his pocket.

Q. At this point, you've seen Mr. Kim now put the baggie in his pocket. What were your suspicions then?

A. That he was in possession of drug paraphernalia.

Id. at 12-13. Wallace testified that he returned to the van and arrested Kim for possession of drug paraphernalia.

Wallace's testimony establishes that, based on his training and experience, he recognized the baggie "as something commonly used to contain illegal controlled substances." CP at 75. The description of the baggie included in finding of fact eleven is consistent with the State's exhibit. The challenged findings of fact are supported by substantial evidence.

Kim next argues that, even if the trial court's findings of fact are supported by substantial evidence, these findings do not support the conclusion that Wallace had probable cause to arrest Kim for possession of drug paraphernalia. Probable cause exists when the facts and circumstances would cause a reasonable officer to believe that a crime has been committed. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). The facts taken together may support

probable cause although no one fact alone would do so. State v. Cole, 128 Wn.2d 262, 286, 906 P.2d 925 (1995).

Possession of drug paraphernalia is a crime only where the possession is accompanied by a statutorily proscribed activity, such as manufacturing, preparing, concealing, or ingesting a controlled substance. State v. George, 146 Wn. App. 906, 918, 193 P.3d 693 (2008) (quoting RCW 69.50.412(1)). As relevant here, a person commits the crime by using paraphernalia to "'store, contain, [or] conceal'" a controlled substance. Id. To assess probable cause, we must thus determine whether the facts and circumstances raise a reasonable inference that the person not only possessed the paraphernalia but also used it in violation of RCW 69.50.412(1)-(2).

In State v. Lowrimore, 67 Wn. App. 949, 959, 841 P.2d 779 (1992), for example, a defendant possessed paraphernalia. She also exhibited "bizarre and emotionally unstable behavior." Id. We held that these facts, taken together, supported probable cause to believe that Lowrimore had possessed paraphernalia and used it to ingest or inhale a controlled substance. Id.

In State v. Neeley, 113 Wn. App. 100, 103, 52 P.3d 539 (2002), officers observed a parked car late at night in an area known for drug activity. The officers saw someone in the car leaning over the passenger seat "bobbing her head up and down in a strange way." Id. When an officer approached the car, he saw a brillo pad, a pair of scissors, and a lighter on the front seat, items he recognized as drug paraphernalia. Id. We held that, from the combined facts of the location of the car, the possession of paraphernalia, and the defendant's

6

behavior, an officer could reasonably infer that the defendant used the paraphernalia to ingest a controlled substance. Id. at 108.

In contrast, in State v. McKenna, 91 Wn. App. 554, 563, 958 P.2d 1017 (1998), we held that the possession of drug paraphernalia, by itself, did not raise an inference of use. In that case, a police officer made a traffic stop. Id. at 556. When he learned that neither McKenna, the car's driver, nor her passenger had a valid driver's license, the officer impounded the vehicle. Id. Another officer offered to drive McKenna home but told her he would have to search her duffle bag for weapons before she could ride in the patrol car. Id. McKenna consented to the search and the officer found a pipe, cigarette wrappers, and a small scale in the bag. Id. The record included no facts or circumstances supporting the inference that McKenna used the paraphernalia for one of the purposes prohibited by statute. Id.

In this case, Officer Wallace observed a van parked opposite a house where drug sales were known to occur. People purchasing drugs at the house commonly parked in the van's location. Wallace knew Kim to be a drug user and he recognized Kim's companion from prior contacts involving drugs. Wallace observed Kim take a small square baggie from under his seat and put it in his pocket as he got out of the van. Wallace recognized the baggie as an item generally used to store or contain drugs. Taken together, these facts are sufficient to cause a reasonable officer to believe Kim was using the baggie to store or conceal drugs.

Kim contends, however, that this case is like McKenna. He argues that the probable cause determination rested primarily on Wallace's recognition of the drug baggie. Kim asserts that the van's location in an area known for drug sales, Kim's prior drug use, and Kim's association with another known drug user are of minimal value in the probable cause assessment. He relies on cases holding that circumstances such as these do not, in isolation, support probable cause. See, e.g., State v. Larson, 93 Wn.2d 638, 645, 611 P.2d 771 (1980) (the defendant's presence in a high crime area did not justify an investigative stop); State v. Hobart, 94 Wn.2d 437, 446-47, 617 P.2d 429 (1980) (prior drug use may lead to the suspicion of current use but does not in itself support probable cause); State v. Weyand, 188 Wn.2d 804, 817, 399 P.3d 530 (2017) (visit to house where residents were known to use drugs did not justify an investigative stop).

Kim is correct that none of the circumstances surrounding his arrest, in isolation, establishes probable cause. But we assess probable cause in light of all of the facts and circumstances known to the officer. See Gaddy, 152 Wn.2d at 70; Cole, 128 Wn.2d at 286. In this case, Kim's location near a house known for drug sales, his prior drug use, his presence in the car with a person known to police for drug-related activity, his possession of a baggie commonly used in the sale of controlled substances, and his removing that baggie from its hiding place under his seat while getting out of the van, taken together, raise a reasonable inference that the bag stored or contained a controlled substance.

No. 76561-2-I/9

Affirmed.

WE CONCUR:

_Spearman, J._

_Schindler, J._   _Leach, J._

9