[No. 26839-6-II. Division Two. October 18, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY LEN BALCH, *Appellant*.

---

[115] Majority opinion at 29.

56

*Manek R. Mistry* (of *Backlund & Mistry*), for appellant (appointed counsel for appeal).

*Christopher O. Shea, Prosecuting Attorney*, and *John G. Prentiss, Deputy*, for respondent.

QUINN-BRINTNALL, A.C.J. — After stopping Gary Balch for speeding, Port Angeles Police Officer Gerald Swayze learned that Balch's license was suspended and that he had an outstanding misdemeanor warrant from another county. Swayze handcuffed Balch, placed him in his patrol car, and then searched Balch's vehicle and found drugs. After the search, Swayze's sergeant arrived and decided to cite Balch for the offenses and release him instead of booking him. The trial court denied Balch's motion to suppress the drug evidence, and a jury convicted him of two counts of unlawful possession of a controlled substance.

Balch appeals, arguing that the search was not a valid search incident to arrest because Swayze did not have the authority (under department policy) to decide whether to arrest him and because he was cited and released that night instead of being taken into custody. But because Balch's arrest was lawful and custodial, regardless of the superior officer's ability to override it, we affirm.

## FACTS

One evening in November of 1999, police officer Gerald Swayze stopped Gary Balch for speeding.[1] When Swayze did a driver's check, he learned that Balch's license was suspended and that he had an outstanding misdemeanor warrant in Lewis County. Police dispatch initially advised Swayze that the warrant was "extraditable."[2] According to the trial court's unchallenged finding of fact, Swayze arrested Balch at this time.

Swayze then handcuffed Balch and placed him in the patrol car. Swayze testified that he arrested Balch both because of the warrant and the suspended license violation. He then addressed his attention to Balch's passenger, Naomi Huggins. Swayze's supervisor, Sergeant McLane, arrived when Swayze was checking Huggins's license, but he did not participate in the search. Swayze searched Balch's vehicle and found a container with marijuana[3] in a trash bag on the floorboard of the passenger's side of the car. Swayze read Balch his rights and questioned him about the drugs.

Five to ten minutes after initially saying the Lewis County warrant was extraditable, dispatch informed Swayze that it was not. The record is not clear on exactly when Swayze received the correction, but it was after Balch was handcuffed, placed in the patrol car, and after his car had been searched.

---

[1] A memorandum opinion lists the facts that were established at the CrR 3.6 hearing. Balch does not assign error to any factual rulings in this opinion. The memorandum's factual findings were not challenged, and are, therefore, verities on appeal. *See State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997).

[2] The intrastate transfer of prisoners is not formally referred to as extradition. Because the concepts are sufficiently similar and the terminology for intrastate transfers inconsistent, we use the term extradition.

[3] Swayze did not realize until after Balch was released that the container with the marijuana also contained cocaine. During his trial testimony, he explained that after citing and releasing Balch, he opened a wrapped-up piece of paper that was in the container with the marijuana and found a white powdery substance that was later tested to be cocaine.

Swayze then told Sergeant McLane about the outstanding warrant and the marijuana. Sergeant McLane directed Swayze to issue Balch a citation and release him.

At the suppression hearing Balch argued that Port Angeles Police Department policy dictates that only the sergeant on duty decides whether to make a custodial arrest on a misdemeanor charge or to issue a citation. The trial court rejected the argument stating

> The Defendant essentially argues that the Sergeant's decision to release or not release was a "precondition" to the custodial arrest of Officer Swayze, i.e. until the Sergeant made a decision the arrest could only be "noncustodial" in nature. To accept this argument the evidence would need to establish a Port Angeles Police Department policy that despite an officer's authority to make a custodial arrest all such arrests would be "noncustodial" unless otherwise directed by an on duty sergeant. The evidence does not support such a policy. Officer Swayze testified that the decision to release or book varies amongst the sergeants and depends on the facts of each case. He further testified that he takes such individuals into custody and releases them only when so instructed. Thus there is no policy presumption in favor of a "noncustodial" arrest and release. Under these circumstances an officer is left to decide whether to make a custodial arrest pending a review by a sergeant. Officer Swayze made such a decision [custodial arrest] prior to any search. Pending Sgt. McLane's decision, therefore he had the lawful authority to conduct a search incident to arrest.

Clerk's Papers (CP) at 41.

The trial court held that "Officer Swayze testified that his intent was to arrest and book the Defendant, i.e. a custodial arrest . . . . Swayze manifested his intent by placing the Defendant in the back of his patrol car" prior to the search of Balch's vehicle. CP at 40-41. Swayze testified that his practice is to book a suspect when the crime is third degree driving while license suspended.

On Sergeant McLane's orders, Balch was cited that night for the license and marijuana offenses. He was charged the

next month with two counts of possession of a controlled substance (to wit: less than 40 grams of marijuana and cocaine) and one count of third degree driving while license suspended.

Just before trial the State dropped the suspended license charge because the Department of Licensing mailed the notice to the wrong address. The jury convicted Balch of two counts of unlawful possession of a controlled substance.

One issue is dispositive of this appeal: Was Balch under lawful custodial arrest when Officer Swayze searched his vehicle?

## ANALYSIS

 Unchallenged findings of fact are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). But the legal conclusions flowing from the facts are questions of law which we review de novo. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Balch does not assign error to any findings of fact contained in the trial court's memorandum opinion; therefore, we review the legal issues presented in his appeal de novo.

 The privacy interests protected under Washington's Constitution article I, section 7 include " 'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.' " *State v. Johnson*, 128 Wn.2d 431, 446, 909 P.2d 293 (1996) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). A warrantless search under article I, section 7 of the constitution (as under the Fourth Amendment) is per se unreasonable unless it falls within one of the exceptions to the warrant requirement. *Johnson*, 128 Wn.2d at 446-47. A search incident to arrest is one such exception:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the

passenger compartment of a vehicle for weapons or destructible evidence.

*State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986). The State has the burden of proving a warrantless search falls under an exception to the warrant requirement. *Johnson*, 128 Wn.2d at 447.

(1) WHETHER BALCH WAS UNDER CUSTODIAL ARREST

■ Balch argues that police may search incident to a lawful custodial arrest, but that they may not search incident to a lawful *noncustodial* arrest, citing *State v. McKenna*, 91 Wn. App. 554, 561, 958 P.2d 1017 (1998). *See* Br. of Appellant at 3.

Here, as below, Balch argues that his arrest was not custodial because (a) Swayze did not have the authority to book Balch under Port Angeles Police Department policy and (b) Balch was cited and released after the search instead of being booked. But the trial court found that "[t]here is no question that Officer Swayze had the legal right to make a custodial arrest of the Defendant for Driving While License Suspended Third Degree and on the Lewis County warrant, if extraditable. *State v. Perea*, 85 Wn. App. [339, 932 P.2d 1258] (1997)." CP at 40. In its memorandum opinion, the trial court also rejected what it called Balch's "precondition" argument stating:

> To accept this argument the evidence would need to establish a Port Angeles Police Department policy that despite an officer's authority to make a custodial arrest all such arrests would be "noncustodial" unless otherwise directed by an on duty sergeant. The evidence does not support such a policy. . . . Officer Swayze made [his custodial arrest] decision prior to any search. Pending Sgt. McLane's decision, therefore he had the lawful authority to conduct a search incident to arrest.

CP at 41.

Balch relies heavily on this court's decision in *McKenna*, 91 Wn. App. 554. In that case, a Kelso police officer stopped a motorist for suspicion of false license tags; as a result of the computer check, the officer discovered additional

grounds to arrest the driver (including an outstanding arrest warrant for driving without a license). *McKenna*, 91 Wn. App. at 556. The officer knew that the Cowlitz County jail was overcrowded and refusing to book anyone arrested only for a nonviolent misdemeanor. He therefore cited McKenna and her passenger and told them they were "free to go." *McKenna*, 91 Wn. App. at 555-56. The car, however, was impounded, so the officers offered McKenna a ride, provided she allow them to search her duffel bag (in which she had placed some items from the car before it was impounded). *McKenna*, 91 Wn. App. at 556-57. She agreed, and after finding drug paraphernalia, the officers ordered McKenna to empty her pockets; she presented a film canister with methamphetamine inside. *McKenna*, 91 Wn. App. at 557. We held the search invalid because it occurred *after* McKenna was released, so even if it had been a custodial arrest "so that it could support a search-incident at some earlier point in time, it cannot support a search-incident *after McKenna had been told she was free to go.*" 91 Wn. App. at 562-63 (emphasis added).

In *McKenna* we expressly did not reach the issue presented here:

> [N]othing herein means that a trial court must suppress evidence when an officer (a) arrests a defendant with probable cause to make a custodial arrest; (b) conducts a search contemporaneous with the arrest; but (c) for objectively manifested reasons arising after the search (e.g., being called to another, more pressing emergency), does not actually take the defendant into custody. We have no occasion to consider such a situation in deciding this case.

*McKenna*, 91 Wn. App. at 564.

The facts in *McKenna* distinguish it from this case. In *McKenna*, officers knew that due to jail overcrowding, they were not going to book the defendants on the charges for which they had probable cause. And in *McKenna*, the search occurred *after* the officers told the defendant that she was released from those charges. Here, Swayze arrested Balch on the Lewis County warrant and for third

degree driving while license suspended. He handcuffed him, placed him into his patrol car, and then searched the interior of Balch's vehicle, finding marijuana. It was only after dispatch advised Swayze and Sergeant McLane, who arrived on the scene following Balch's arrest, that the Lewis County warrant was not extraditable that Sergeant McLane overrode Swayze's decision and ordered him to cite and release Balch instead of booking him.

Here the arrest was supported by probable cause and was not contrary to law.[4] We agree with the trial court that Balch's arrest was custodial.

(2) SIGNIFICANCE OF POST-SEARCH RELEASE

 A lawful search incident to arrest need not follow an arrest, so long as the search and the arrest are reasonably closely related in time and place. *State v. Smith*, 88 Wn.2d 127, 138, 559 P.2d 970, *cert. denied*, 434 U.S. 876 (1977). *See also State v. Harrell*, 83 Wn. App. 393, 400, 923 P.2d 698 (1996) (as long as probable cause exists at time of search, it may be considered search incident to arrest even if it occurs shortly before arrest); *State v. Smith*, 119 Wn.2d 675, 682-83, 835 P.2d 1025 (1992) (delay of 17 minutes between arrest and search of "fanny pack" incident to arrest not unreasonable, where delay resulted from officer's reasonable actions designed to secure premises and to protect herself and the public).

██ But an officer must have probable cause to arrest before making a warrantless search incident to custodial arrest; the fruits of the search cannot justify the arrest. *McKenna*, 91 Wn. App. at 560. In *McKenna*, this court

---

[4] The record does not reveal the exact statute with which Balch was charged; it was likely RCW 46.20.342(1)(c), third degree driving while license suspended. That offense justifies custodial arrest:

(3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

. . . .

(e) RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked.

RCW 10.31.100.

observed that "[t]he right to search incident to a lawful custodial arrest, once acquired, terminates *no later than* when the officer announces that the arrestee will be released rather than booked." *McKenna*, 91 Wn. App. at 561-62 (emphasis added). The announcement that Balch would be released came after the completion of the search incident to his arrest, when Sergeant McLane and Swayze learned they had been misinformed and that the warrant was not extraditable.

 Swayze had probable cause to arrest Balch on the Lewis County warrant and for driving with a suspended license.[5] Balch's subsequent release, following correction of the warrant status information, did not affect the validity of the search incident to his previous lawful custodial arrest. *See also State v. Garcia*, 35 Wn. App. 174, 665 P.2d 1381 (holding inventory search of arrestee's wallet incident to his booking valid, even though arrestee subsequently released from custody after spending a short time in a cell), *review denied*, 100 Wn.2d 1019 (1983).

Here, Balch's speeding provided justification for the stop, the outstanding warrant and his suspended driver's license provided probable cause for his custodial arrest and triggered *Stroud*'s bright-line rule. *See Stroud*, 106 Wn.2d at 152 (allowing search of passenger compartment but not locked containers when incident to lawful custodial arrest). Balch's arrest on an outstanding misdemeanor warrant and for driving with a suspended license was lawful, and the search incident to his arrest was proper. The fact that he was released prior to being booked, when the officers subsequently learned that the warrant was nonextraditable, did not alter the custodial character of Balch's arrest. Therefore, the evidence recovered during the search was admissible at Balch's trial. We affirm.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder will

---

[5] Swayze also believed he had cause to arrest on the Lewis County warrant, until he learned it was not extraditable.

be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SEINFELD and HOUGHTON, JJ., concur.