[No. 51056-8-I.   Division One.   February 23, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. VAN RONALD PULFREY, *Appellant*.

*Maureen M. Cyr* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Mychal H. Schwartz, Deputy*, for respondent.

KENNEDY, J. — Van R. Pulfrey was convicted of possession of methamphetamine, which was found during a search incident to his custodial arrest for driving with a suspended license in the third degree, a misdemeanor offense. The arresting officer testified that he "always" makes a full custodial arrest of persons suspected of driving while their licenses are suspended, and "always" searches their persons and vehicles incident to such arrests. Pulfrey argues that based on this testimony, the trial court should have granted his motion to suppress the evidence found during the search incident, in that the officer's categorical refusal

to exercise the discretion granted by statute to issue a citation and notice to appear, in lieu of making a custodial arrest for this offense, violated the statute, thereby making the custodial arrest unlawful. But our Supreme Court has ruled that no additional justification beyond probable cause need be shown where custodial arrest is authorized by statute, as it is here. Accordingly, we decline to extend judicial oversight of police decisions regarding custodial arrest beyond the determination of probable cause, and affirm the trial court's ruling denying Pulfrey's motion to suppress the evidence discovered during the search incident to Pulfrey's custodial arrest.

## FACTS

On August 24, 2000, at about 9 P.M., King County Deputy Sheriff George Alvarez pulled Van Pulfrey over for driving with his left taillight out. Pulfrey responded to the officer's signal by pulling into a parking lot in front of an Al's Auto Supply store. When the officer told him that his left taillight was out, he said he had been headed to Al's Auto Supply in order to replace the taillight. Deputy Alvarez nevertheless obtained Pulfrey's driver's license and, upon checking the license with the Department of Licensing, learned that the license had been suspended. The officer then arrested Pulfrey for third degree driving while license suspended, a misdemeanor, placed him in the back of his patrol car, and proceeded to search the vehicle. In the course of the search, the officer found two bags of methamphetamine under the driver's seat.

Pulfrey was the only person in the vehicle when he was pulled over. The vehicle was registered to a friend of his, who showed up at the scene by the time that the officer finished searching the car. Accordingly, the officer released the vehicle and its keys to the registered owner rather than impounding it. The officer informed Pulfrey that he was under arrest for violation of the controlled substances act, and took him to jail. Pulfrey was subsequently charged with unlawful possession of methamphetamine.

Pulfrey filed a CrR 3.6 motion to suppress the evidence seized from the car. On cross-examination, Pulfrey's attorney asked the officer why he took full custody of Pulfrey, rather than simply issuing a citation and notice to appear in court as the statute permits. The deputy responded, "It's our practice—or my practice, if somebody is suspended [driving with a suspended license], I take them into custody." Report of Proceedings (Mar. 14, 2001) at 19. The officer also testified that he "always" searches such drivers' vehicles incident to their custodial arrests. *Id.* at 28.

The trial court, although troubled by the officer's failure to exercise discretion whether to issue a citation or to perform a full custodial arrest, denied the motion to suppress, concluding that the officer had statutory authority to make a full custodial arrest for the criminal offense of driving with a suspended license, and the constitutional authority to search Pulfrey's car incident to that arrest.

Pulfrey then waived his right to a jury trial, and a bench trial was held on stipulated facts. On March 15, 2001, the court found Pulfrey guilty of unlawfully possessing methamphetamine. For reasons not germane to our discussion in this published portion of our opinion, Pulfrey was not sentenced until August 9, 2002. He was given a standard range sentence, and brought this timely appeal.

## ANALYSIS

In 1979, the legislature decriminalized most traffic offenses. *State v. Reding*, 119 Wn.2d 685, 688, 835 P.2d 1019 (1992) (citing LAWS OF 1979, 1st Ex. Sess., ch. 136, § 2, codified as RCW 46.63.020). Certain offenses, however, such as driving with a suspended license in the first, second, and third degrees remain criminal. *Id.*; RCW 46.20.342.[1]

---

[1] RCW 46.20.342(1)(c) provides that a person is guilty of driving while license is suspended in the third degree, a misdemeanor, if at the time of the offense his or her license was suspended or revoked solely because (1) the person must furnish proof of satisfactory progress in a required alcoholism or drug treatment program, (2) the person must furnish proof of financial responsibility for the future as provided by chapter 46.29 RCW, (3) the person has failed to comply with the

Accordingly, a police officer having probable cause to believe that a person has committed or is committing the offense of driving a vehicle while his or her license is suspended or revoked is authorized to place the driver under custodial arrest without a warrant. RCW 10.31-.100(3)(e);[2] *State v. Perea*, 85 Wn. App. 339, 341-42, 932 P.2d 1258 (1997); *Reding*, 119 Wn.2d at 691-92. Incident to a lawful custodial arrest, police may make a warrantless search of the person and the passenger compartment of the vehicle that he or she was driving at the time of the arrest, for weapons or destructible evidence under the Fourth Amendment and Const. art. I, § 7. *State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986); *State v. Quintero-Quintero*, 60 Wn. App. 902, 906, 808 P.2d 183 (1991).

Police are not *required* to make a full custodial arrest for the crime of driving with a suspended or revoked license, however. Officers may opt instead to issue a citation and notice to appear in court. RCW 46.64.015; CrRLJ 2.1(b)(1).[3]

---

provisions of chapter 46.29 RCW relating to uninsured accidents, (4) the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation as provided in RCW 46.20.289, (5) the person has committed an offense in another state that, if committed in this state, would not be grounds for the suspension or revocation of the person's driver's license, (6) the person has been suspended or revoked by reason of one or more of the reasons listed in RCW 46.20.342(1)(b) (such as having been convicted of drunken or reckless driving) but was eligible to reinstate the license at the time of the violation, or (7) the person has received traffic citations or notices of traffic infractions that have resulted in a suspension under RCW 46.20.267 relating to intermediate drivers' licenses, or any combination of the above.

[2] RCW 10.31.100(3) states, in pertinent part:

"(3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

". . . .

"(e) RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked."

[3] RCW 46.64.015 provides, in relevant part:

"Whenever any person is arrested for any violation of the traffic laws or regulations which is punishable as a misdemeanor or by imposition of a fine, the arresting officer may serve upon him or her a traffic citation and notice to appear in court."

A citation and notice to appear releases a defendant on his or her personal recognizance after a noncustodial arrest has been made. *State v. Doolittle*, 69 Wn.2d 744, 749-50, 419 P.2d 1012 (1966).

CrRLJ 2.1(b)(2) sets out the following release factors to aid police in exercising discretion whether to issue a citation or to make a custodial arrest:

(2) *Release Factors.* In determining whether to release the person or to hold him or her in custody, the peace officer shall consider the following factors:

(i) whether the person has identified himself or herself satisfactorily;

(ii) whether detention appears reasonably necessary to prevent imminent bodily harm to himself, herself, or another, or injury to property, or breach of the peace;

(iii) whether the person has ties to the community reasonably sufficient to assure his or her appearance or whether there is substantial likelihood that he or she will refuse to respond to the citation and notice; and

(iv) whether the person previously has failed to appear in response to a citation and notice issued pursuant to this rule or to other lawful process.

Contrary to the State's argument for this appeal (an argument for which it provides no authority because there is none), an officer who chooses to issue a citation and notice to appear rather than making a custodial arrest does *not* have authority to search the vehicle, even if the officer could have chosen instead to make a full custodial arrest. *Knowles v. Iowa*, 525 U.S. 113, 115-16, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998); *State v. McKenna*, 91 Wn. App. 554, 561, 958 P.2d 1017 (1998).

Here, Deputy Alvarez took Pulfrey into full custody for driving with a suspended license, without any consider-

---

CrRLJ 2.1(b)(1) provides:

"Whenever a person is arrested or could have been arrested pursuant to statute for a violation of law which is punishable as a misdemeanor or gross misdemeanor the arresting officer, or any other authorized peace officer, may serve upon the person a citation and notice to appear in court."

ation of the option of issuing a citation and notice to appear in court. In fact, he testified at the suppression hearing that it was his practice to take persons found driving with a suspended license into custody, and he "always" performs a search of their cars incident to such arrests. Pulfrey argues that by automatically taking full custody of all suspects such as himself, as a matter of course, Officer Alvarez failed to exercise the discretion granted by RCW 46.64.015 and CrRLJ 2.1(b)(1), thereby violating the statute.

In support of this reasoning, Pulfrey cites *In re Improundment of Chevrolet Truck*, 148 Wn.2d 145, 60 P.3d 53 (2002). There, our Supreme Court struck down a regulation promulgated by the Washington State Patrol that removed the legislatively granted discretion to individual troopers to decide whether to order a vehicle impounded when its driver is found to be driving on a license that has been suspended or revoked. Because the court concluded that the State Patrol had exceeded its statutory authority by removing the discretion granted by the legislature to individual troopers, the court declined to reach the state and federal constitutional issues raised by the parties regarding impoundment of vehicles when another reasonable means of protecting public safety exists. *Id.* at 159-60.

Relying on a footnote in *In re Impoundment of Chevrolet Truck*, Pulfrey argues that individual police officers *must* exercise the discretion they have been granted by statute, so that if a police officer refuses to exercise the discretion granted by RCW 46.64.015 and RCW 10.31.100(3) and "always" places drivers found to be driving with a suspended license under full custodial arrest regardless of the circumstances, the custodial arrest is per se arbitrary and unreasonable. Pulfrey misreads the footnote, which is found at 148 Wn.2d at 150 n.2. There, in the course of rejecting the reasoning of the trial court that if the constitution requires discretion be exercised by the officer at the scene before impounding the vehicle of a person found to be driving with a suspended or revoked license, the impoundment was nevertheless reasonable in that particular case, the court said: "We reject

this reasoning on grounds of logic. Since WAC 204-96-010 divests officers of all discretion on whether to impound a particular vehicle, the officer who impounded All Around's van cannot have reasonably exercised discretion he did not have."

The court did not, as Pulfrey contends, thereby hold that police officers *must* exercise the discretion granted by statute else they violate the statute, and the constitution as well. The issue in that case was whether the State Patrol as an agency of state government had the statutory authority to remove individual officer discretion granted by the legislature, by means of a regulation removing individual officer discretion, and the answer was no. 148 Wn.2d at 156-57, 159-60. Moreover, *In re Impoundment of Chevrolet Truck* was expressly decided on statutory grounds, not constitutional grounds. *Id.* at 159-60.

Pulfrey also relies upon *State v. Pettitt*, 93 Wn.2d 288, 609 P.2d 1364 (1980) and *State v. WS*, 40 Wn. App. 835, 700 P.2d 1192 (1985). In *Pettitt*, the Supreme Court affirmed the defendant's conviction for taking/riding in a motor vehicle without permission of the owner, but remanded for reconsideration of his sentence to prison for life as an habitual offender because the former Lewis County prosecutor had testified below that he "always" filed supplemental habitual offender informations, regardless of any mitigating circumstances (of which the prosecutor could imagine none) when the defendant had been previously three times convicted of qualifying felony offenses. After noting the wide discretion afforded to prosecutors with respect to charging decisions, the court said: "The discretion lodged in the office necessarily assumes that the prosecutor will exercise it after an analysis of all available relevant information." 93 Wn.2d at 295. The court remanded for resentencing, and directed the trial court to consider a recommendation from the prosecutor reached through the exercise of prosecutorial discretion. *Id.* at 296. Because the decision rested on abuse of prosecutorial discretion, the court declined to consider whether the prosecutor's mandatory policy violated the defendant's constitutional right to due process of law. *Id.*

In *State v. WS*, this court reversed a juvenile's adjudication of guilty for offering and agreeing to an act of prostitution, on grounds that the prosecuting attorney's categorical refusal to refer any juvenile charged with prostitution for diversion was both arbitrary and a usurpation of legislative authority—in that the policy was contrary to the intent of the legislature in enacting the Juvenile Justice Act of 1977 (chapter 13.40 RCW)—under which juvenile prostitutes clearly qualified for diversion. *WS*, 40 Wn. App. at 837-38. The case was remanded for referral to the diversion unit for screening.

Pulfrey argues that *Pettitt* and *WS* support a ruling by this court that when the legislature granted discretion to individual officers whether to perform a custodial arrest or to issue a citation, and when our Supreme Court set down guidelines to aid police in exercising their discretion in such cases, both the legislature and the court necessarily intended that police would exercise their discretion, and not categorically refuse to do so. But *Pettitt* and *WS* deal with abuse of *prosecutorial* discretion, not police officer discretion. As explained in *Pettitt*, "the exercise of prosecutorial discretion is an important and delicate component of the office" in that the prosecutor is both an administrator of justice and an advocate who "must exercise sound discretion in the performance of his functions" and whose "broad discretion . . . in deciding whether to bring charges and in choosing the particular charges to be made requires that the greatest effort be made to see that this power is used fairly and uniformly." 93 Wn.2d at 295 (citations and interior quotation marks omitted). Moreover, in both *Pettitt* and *WS*, the courts were dealing with policy decisions made by elected prosecuting attorneys that were binding upon individual deputy prosecutors in their respective offices. Here, Officer Alvarez testified as to his own practice, not as to policy set down by the sheriff to govern the arrest decisions of every officer in the department.

Pulfrey has ignored the appellate decisions that in fact provide persuasive authority. One such is *State v. Reding*,

119 Wn.2d at 695, where Justice Utter wrote for a unanimous court:

> Finally, we reject Reding's argument that his arrest for reckless driving is only valid if some additional factor was present or if circumstances indicated he would not make an appearance if issued a citation. The statutes, RCW 46.64.015 and RCW 10.31.100, do not require some additional factor to be present for police to have authority to perform a custodial arrest for reckless driving. Under [*State v.*] *Hehman*, [90 Wn.2d 45, 50, 578 P.2d 527 (1978)] the only time additional grounds are necessary for an arrest to be valid is when a minor traffic offense has been committed. Because reckless driving is not a minor traffic violation, we need not inquire whether "other reasonable grounds" existed for the arrest.

(Citations omitted.)

In *State v. Thomas*, 89 Wn. App. 774, 950 P.2d 498 (1998), Division Three of our court was faced with a case in which officers exercised discretion to make a custodial arrest for reckless driving on grounds that later proved to be nonexistent. In Spokane, although authorized by statute to do so, police ordinarily did not place persons arrested for reckless driving under custodial arrest, in order to limit jail population. They did arrest such drivers however if police records designated the driver as a gang member affiliate. 89 Wn. App. at 775. When defendant Thomas was stopped by Spokane Police for reckless driving committed in their presence, the officers were advised by police radio that Thomas was listed as a gang member affiliate, so they placed him under custodial arrest. *Id.* at 776. They conducted a search of the vehicle he had been driving and found a bag of cocaine. *Id.* Testimony at the ensuing suppression hearing established that although Thomas had once been listed by police as a gang member affiliate, his name had since been removed from the list. *Id.*

The trial court found that probable cause existed to arrest Thomas for reckless driving, but nevertheless granted Thomas's motion to suppress the evidence obtained during the search incident, reasoning that since the custodial

arrest decision was made on the basis of incorrect information, the arrest was unlawful, and the subsequent car search was unjustified. *Id.* The State appealed, and the appellate court reversed the ruling and remanded for trial:

> *Reding* specifically held that RCW 46.64.015 and RCW 10.31.100(3) authorize custodial arrest for reckless driving. The court here found Mr. Thomas committed reckless driving in front of the police officers and their stop was not a pretext. Thus, the officers had probable cause to make a custodial arrest of Mr. Thomas. The usual practice of Spokane police officers is to cite and release reckless drivers, but the officers decided to make a custodial arrest of Mr. Thomas because they believed he was gang affiliated. The State contends the court should not have looked at the reason the officers made the custodial arrest because the officers had probable cause to make the custodial arrest without the erroneous information. We agree.

> *Reding* states: "The statutes, RCW 46.64.015 and RCW 10.31.100 do not require some additional factor to be present for police to have authority to perform a custodial arrest for reckless driving." Whether Mr. Thomas was gang affiliated or not, the officers had the authority to make a custodial arrest.

*Thomas*, 89 Wn. App. at 779 (citations omitted).

Division Two of our court made a similar ruling in *State v. Clausen*, 113 Wn. App. 657, 56 P.3d 587 (2002). There, two days after having run the license plates on a parked vehicle and learning that the vehicle's owner, Clausen, had a suspended driver's license, police saw Clausen driving the vehicle. They pulled him over and confirmed through dispatch that his license was still suspended. They placed him under custodial arrest, promptly impounded his vehicle, and performed an inventory search, finding methamphetamine, marijuana, and drug paraphernalia in the vehicle. The State charged Clausen with possession of the controlled substances and use of the drug paraphernalia, together with driving while license suspended in the third degree. 113 Wn. App. at 659. At the ensuing suppression hearing, testimony revealed that on the day of Clausen's arrest, the Cowlitz County Jail had surpassed its maximum

capacity, and barring special circumstances was not booking detainees arrested for nonviolent misdemeanors such as driving while license suspended in the third degree. Thus, if an officer presented a detainee to the jail on a nonviolent misdemeanor charge, the shift sergeant determined whether the jail would book the person, and generally would not do so, unless the person posed some kind of threat to the community. *Id.*

Apparently, when Clausen was presented at the jail, he was either booked and then released immediately, or simply released without being booked. He asked the trial court to rule that his arrest had been noncustodial from the start. The trial court declined to so rule, and Clausen was found guilty of all charges. *Id.* at 660. The appellate court affirmed, holding that Clausen had been placed under lawful custodial arrest despite the jail's booking policy, and that the trial court did not err in refusing to suppress the evidence found in the search incident to the arrest and vehicle impoundment. *Id.* at 661. *See also State v. Balch*, 114 Wn. App. 55, 55 P.3d 1199 (2002) (defendant stopped for speeding; license check revealed that defendant's driver's license was suspended and that he was wanted on an outstanding, extraditable misdemeanor warrant from another county; during a search incident to custodial arrest for driving while license suspended and also on the out-of-county warrant, the officer found marijuana; after police dispatch subsequently told the officer that the misdemeanor warrant was not in fact extraditable, the officer's sergeant directed the officer to issue a citation for the license suspension and marijuana charges, and to release the defendant; the officer did so. Held: since the officer had probable cause and statutory authority to place the defendant under custodial arrest for driving while license suspended, and did so, the fact that the sergeant subsequently ordered the officer to cite and release the defendant, rather than to book him into jail, did not invalidate the earlier lawful custodial arrest and search incident.).

We have not been asked to decide this case on constitutional grounds, and do not purport to do so. Nevertheless, a

recent United States Supreme Court case provides a helpful analogy. In *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001), although concluding that the police officer egregiously abused his discretion in making the custodial arrest, the majority opted for a bright-line rule, simple in its application:

> Accordingly, we confirm today what our prior cases have intimated: the standard of probable cause applies to all arrests, without the need to balance the interests and circumstances involved in particular situations. If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

532 U.S. at 354 (citation and interior quotation marks omitted).[4]

---

[4] Writing for herself and three other dissenting justices, Justice O'Connor disagreed:

> Under today's holding, when a police officer has probable cause to believe that a fine-only misdemeanor offense has occurred, that officer may stop the suspect, issue a citation, and let the person continue on her way. Or, if a traffic violation, the officer may stop the car, arrest the driver, search the driver, search the entire passenger compartment of the car including any purse or package inside, and impound the car and inventory all of its contents. Although the Fourth Amendment expressly requires that the latter course be a reasonable and proportional response to the circumstances of the offense, the majority gives officers unfettered discretion to choose that course without articulating a single reason why such action is appropriate.

> Such unbounded discretion carries with it grave potential for abuse. The majority takes comfort in the lack of evidence of an epidemic of unnecessary minor-offense arrests. But the relatively small number of published cases dealing with such arrests proves little and should provide little solace. Indeed, as the recent debate over racial profiling demonstrates all too clearly, a relatively minor traffic infraction may often serve as an excuse for stopping and harassing an individual. After today, the arsenal available to any officer extends to a full arrest and the searches permissible concomitant to that arrest. An officer's subjective motivations for making a traffic stop are not relevant considerations in determining the reasonableness of the stop. But it is precisely because these motivations are beyond our purview that we must vigilantly ensure that officers' poststop actions—which are properly within our reach—comport with the Fourth Amendment's guarantee of reasonableness.

> The Court neglects the Fourth Amendment's express command in the name of administrative ease. In so doing, it cloaks the pointless indignity that Gail Atwater suffered with the mantle of reasonableness. I respectfully dissent.

*Atwater*, 532 U.S. at 372-73 (O'Connor, J., dissenting) (citations and interior quotation marks omitted).

Where constitutionally permitted, the Washington appellate courts also favor bright-line rules that police officers can easily apply:

> " 'A highly sophisticated set of rules . . . requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be "literally impossible of application by the officer in the field." ' "
>
> We agree with the Supreme Court's decision to draw a clearer line to aid police enforcement, although because of our state's additional protection of privacy rights we must draw the line differently than did the United States Supreme Court.

*State v. Stroud,* 106 Wn.2d 144, 151, 720 P.2d 436 (1986) (quoting *New York v. Belton,* 453 U.S. 454, 458, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (quoting Wayne R. LaFave, *"Case-By-Case Adjudication" versus "Standardized Procedures": The* Robinson *Dilemma,* 1974 SUP. CT. REV. 127, 141)).

Our Supreme Court has not seen fit to rule that something more than probable cause—such as circumstances indicating that the driver would not appear if issued a citation—must be shown in order to justify an officer's decision to make a custodial arrest when that is an option authorized by our legislature. *See Reding,* 119 Wn.2d at 695. And the *Reding* court expressly declined to second-guess, within constitutional limitations, the legislature's determination of which traffic offenses should be decriminalized and which may merit a custodial arrest because they are of a more serious nature. *Id.* at 691 n.2. Our colleagues at Divisions Two and Three of this court have followed the lead of the Supreme Court in this regard, in similar cases to this one.

Accordingly, we reject Pulfrey's argument that police *must* exercise the discretion granted by the legislature and therefore that they *must* decide on a case-by-case basis whether custodial arrest is justified on some additional basis than probable cause, where the legislature has already authorized custodial arrest for the offense in question. We affirm the trial court's decision denying Pulfrey's

motion to suppress the methamphetamine found during the search of his vehicle incident to his lawful custodial arrest for driving with a suspended license in the third degree.

The remainder of this decision lacks precedential value and will not be published in the Washington Appellate Reports, but will be filed of record as provided by RCW 2.06.040.

BECKER, C.J., and AGID, J., concur.

Review granted at 152 Wn.2d 1021 (2004).