IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79650-0-I |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN KEZA, | ) | |
| | ) | |
| Respondent. | ) | FILED: March 23, 2020 |
| | ) | |

ANDRUS, J – The State appeals the trial court's decision to suppress drug evidence found during a search of Keza incident to his arrest. It argues that the court erred in concluding that the police officer's encounter with Keza, although initially justified as a social contact, evolved into an unlawful seizure when the officer asked Keza for his name. Although we agree with the State that a police officer may ask someone their name without turning the contact into a seizure, we nevertheless affirm the suppression of the evidence on alternative grounds.

## FACTS

Around midnight on September 14, 2018, Snohomish County Sheriff Deputy Patrick McGrath was on patrol along Highway 99 in Lynnwood when he saw an adult male, later identified as Steven Keza, and an adult female sitting on a public sidewalk next to a restaurant in a strip mall. The restaurant, closed at the

time, had a sign in the window that read "No Trespassing." Other businesses in the strip mall were open.

Deputy McGrath testified that he decided to conduct a Terry[1] stop because he suspected Keza and his companion of drug activity. Deputy McGrath parked his marked patrol car and approached the two because it was so late, because he was aware of the "No Trespassing" sign, and because he knew that drug paraphernalia had previously been found in the bushes close to where they were sitting. Deputy McGrath asked Keza and his companion what they were doing and mentioned something to them about the "No Trespassing" sign. Keza told Deputy McGrath that they were merely charging a cell phone. Deputy McGrath saw a cord plugged into an electrical outlet on the outside of the building. Deputy McGrath saw nothing to make him suspect that Keza or his companion were under the influence of drugs or alcohol.

Deputy McGrath then asked Keza his name. Keza identified himself as "Steve Worley." When Deputy McGrath communicated this name to the police dispatcher, he found no record of a Steve Worley. Deputy McGrath accused Keza of lying about his identity, at which point Keza admitted that his name was Steve Keza and that there was a warrant out for his arrest. Deputy McGrath did not arrest Keza on this warrant because he learned it was "non-extraditable."[2] Instead,

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2] A non-extraditable warrant is an arrest warrant for a misdemeanor offense or a failure to appear in court on that misdemeanor offense issued by a court in another jurisdiction within the state. State v. Balch, 114 Wn. App. 55, 56, 55 P.3d 1199 (2002). A police officer has the legal authority to arrest someone on an outstanding warrant from another county, and a search incident to such an arrest is lawful. Id. at 61. Deputy McGrath did not arrest Keza on the non-extraditable arrest warrant, and the State never argued that the search incident to arrest was lawful because of the existence of this warrant.

- 2 -

Deputy McGrath arrested Keza for providing false information to a police officer and for trespass.

During a search incident to arrest, Deputy McGrath found small bags of both methamphetamine and cocaine in Keza's pockets. The State subsequently charged Keza with one count of possessing a controlled substance. The State did not charge him with the alleged crimes that led to his arrest.

Keza moved to suppress the evidence that Deputy McGrath found during the search, arguing that his seizure was unlawful. After a suppression hearing, the trial court concluded that Deputy McGrath's interaction with Keza was a social contact that became a seizure at the time Deputy McGrath asked Keza his name. In its written findings of fact and conclusions of law the court stated that Deputy McGrath did not have any basis to ask Keza for his name because "[Deputy McGrath] did not perceive Mr. Keza to be under the influence or to exhibit any suspicious behavior." The court ruled the seizure was not supported by reasonable suspicion and granted Keza's motion to suppress. Because the court's ruling on the motion to suppress effectively terminated the State's case, it dismissed the charges against Keza with prejudice.

The State appeals the order suppressing the evidence and dismissal of the charge. It contends that the trial court correctly concluded that the interaction between Deputy McGrath and Keza was a social contact but erred in concluding that McGrath had to have a basis for requesting Keza's name during that contact. The State argues, alternatively, that even if Deputy McGrath's interaction became a seizure, the court erred in concluding he lacked a reasonable suspicion that Keza

was engaging in criminal activity and that the detention and arrest were justified based on Keza's trespass and theft of a business's electricity.

## ANALYSIS

At issue in this appeal is whether Deputy McGrath's interaction with Keza was a "social contact" or a seizure, and whether the seizure, if any, was lawful.

Keza contended below that Deputy McGrath conducted an unlawful investigative detention under Terry. The State conceded that the encounter was an investigative detention but argued that it was supported by reasonable suspicion. The trial court concluded that Deputy McGrath "did not have facts sufficient to conduct a Terry stop," but appears to have disagreed with the State and Keza that the seizure occurred at the inception of the interaction. The trial court appears to have concluded that the initial encounter was a social contact that evolved into a seizure when Deputy McGrath asked Keza his name:

> While a social contact may include asking an individual for their name and identification, there were not facts sufficient to take that additional step in this case. Mr. Keza was in a public place, open to and adjacent to a parking lot. The officer did not perceive Mr. Keza to be under the influence or to exhibit any suspicious behavior.
>
> When the officer learned that Mr. Keza and his companion were sitting where they were to charge a cell phone, that should have ended the officer's inquiry.
>
> The officer did not have a basis to request Mr. Keza's identification.

The State now argues that the trial court correctly concluded that the encounter was merely a social contact but nevertheless erred in concluding that the encounter became a seizure when Deputy McGrath asked Keza his name. Keza contends that the State cannot advance this argument on appeal because it

- 4 -

waived the argument below and this waiver led Keza to forego the opportunity to develop the factual record to establish the coercive nature of Deputy McGrath's interaction with him.

Under RAP 2.5(a), "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." But we have the discretion to consider for the first time on appeal whether an investigative detention rises to the level of a seizure. See State v. Cerrillo, 122 Wn. App. 341, 345, 93 P.3d 960 (2004) (State asserted for first time on appeal that initial stop was not a seizure; court of appeals exercised discretion to review the issue). We exercise our discretion under RAP 2.5(a) to address the State's argument here in order to correct a legal error of the trial court.

Article 1, section 7 of the Washington Constitution protects individuals from warrantless searches or seizures. State v. Harrington, 167 Wn.2d 656, 663, 222 P.3d 92 (2009). A seizure under article I, section 7 occurs when, by means of physical force or a show of authority, an individual's freedom of movement is restrained and a reasonable person would not believe he or she is free to leave or decline an officer's request for information. State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998). The standard is a purely objective one, looking to the actions of the law enforcement officer. Id. at 501. And the "reasonable person" test presupposes an innocent person. Florida v. Bostick, 501 U.S. 429, 438, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

"Whether police have seized a person is a mixed question of law and fact." Harrington, 167 Wn.2d at 662. While "[t]he resolution by a trial court of differing

accounts of the circumstances surrounding the encounter are factual findings entitled to great deference . . . the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo." State v. Thorn, 129 Wn.2d 347, 351, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003). The State has not challenged any of the trial court's findings of fact regarding the encounter between Deputy McGrath and Keza.[3] Unchallenged findings of fact following a CrR 3.6 suppression hearing are accepted as true on appeal. State v. O'Cain, 108 Wn. App. 542, 548, 31 P.3d 733 (2001).

The trial court concluded that Deputy McGrath's initial conversation with Keza was a social contact. We agree with this conclusion. As we recently noted in State v. Johnson, 8 Wn. App. 2d 728, 735, 440 P.3d 1032 (2019), a "social contact" merely describes an encounter between police and an individual that does not amount to a seizure. Article I, section 7 of the Washington Constitution does not forbid social contacts between police and citizens. Engaging in a conversation with a defendant in a public place and asking for identification does not, alone, raise the encounter to an investigative detention. Young, 135 Wn.2d at 511. Police do not need an articulable suspicion of wrongdoing to start a conversation and to ask for identification. Id.

But an encounter that begins as a social contact may evolve into a seizure when the cumulative weight of the circumstances leads from one conclusion (no

---

[3] The State assigned error to a part of Finding of Fact 3, in which the trial court found that Keza's cell phone charger cord "was plugged into an open and available outlet on the exterior of the building." The State only assigned error to this finding "to the extent 'available' implies the use was authorized by the owner."

seizure) to the other (seizure). Johnson, 8 Wn. App. 2d at 737, fn. 2; see also United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S.Ct. 1870, 64 L. Ed. 2d 497 (1980) (permissible social contact may be transformed into impermissible warrantless seizure depending on threatening presence of officers, display of a weapon, physical touching of the citizen, or the use of language or tone of voice indicating compliance with officer's request might be compelled).

Under the circumstances here, we disagree with the trial court that by asking Keza his name, Deputy McGrath converted this social contact into a seizure. In Thorn, our Supreme Court rejected the notion that a police officer who approached the defendant and asked "where is the pipe?" had seized the defendant. 129 Wn.2d at 352. It reasoned that merely striking up a conversation and asking a single question did not, under the circumstances of that case, create a coercive environment. Id. By analogy here, approaching Keza, asking him what he was doing, and asking him his name was no more coercive than was the act of asking Thorn about the location of his pipe.

Certainly, demanding to see a driver's license or identification card can convert a social contact into a seizure. See Johnson, 8 Wn. App. 2d at 744-45 (suggesting a vehicle in which the defendant sat had been stolen and demanding to see the defendant's driver's license became "the tipping point at which the weight of the circumstances transformed a simple encounter into a seizure"). But Deputy McGrath did not demand that Keza produce a driver's license or an identification card. He did not command Keza to do anything. And although Keza

argues on appeal that Deputy McGrath "accused" him of trespassing, the record does not support that characterization of the initial conversation between the two.

Moreover, while Deputy McGrath testified that "from his perspective," Keza was not free to leave, the subjective intent of the police to execute a seizure is not relevant unless that intent is conveyed to the defendant. Mendenhall, 446 U.S. at 554 n. 6; State v. Carriero, 8 Wn. App. 2d 641, 655, 439 P.3d 679 (2019). There is no evidence that Deputy McGrath told Keza that he could not leave or told him to wait while he checked on the name Keza provided.

Under the totality of these circumstances, viewed objectively, Deputy McGrath's actions up to the point he asked Keza his name do not warrant the conclusion that there was a show of authority amounting to a seizure.

But circumstances then quickly changed. After Keza provided a fake name, Deputy McGrath "ran it through . . . dispatch" and learned that there was no record of any individual by that name in the system. Deputy McGrath assumed that Keza had lied to him so he went back to "call[] him on it" and said "I believe you are lying to me." When Keza admitted that he had provided a fake name, Deputy McGrath arrested him for "providing false information" and for trespass.

Although it is quite possible that the officer's act of accusing Keza of lying to him was sufficient to convert this encounter into a seizure, we need not reach that issue because there is no question that Keza's arrest became the "quintessential seizure of the person." Thorn, 129 Wn.2d at 356 fn. 7 (quoting United States v. Hodari, 499 U.S. 621, 624, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)).

The State argues that the seizure and arrest were justified because Deputy McGrath had both reasonable suspicion to believe, and probable cause to conclude, that Keza was committing the crimes of trespass and theft of services under RCW 9A.56.020(1)(a) and 9A.56.010(10).[4] We disagree.

An investigative Terry detention, based on less evidence than needed to make an arrest, requires "specific and articulable," objective facts that give rise to a reasonable suspicion that the individual has been involved in a crime. State v. Dorey, 145 Wn. App. 423, 429, 186 P.3d 363 (2008). The trial court concluded that Deputy McGrath lacked a reasonable suspicion that Keza had committed trespass. We review this decision only to determine if the findings of fact support its conclusions of law. State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), overruled on other grounds by Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

Probable cause to make a warrantless arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed. State v. Perez, 5 Wn. App. 2d 867, 871-72, 428 P.3d 1251 (2018). Whether evidence meets the probable cause standard is a question of law we review de novo. In re Detention of Petersen, 145 Wn.2d 789, 799, 42 P.3d 952 (2002).

Deputy McGrath had neither reasonable suspicion to detain Keza nor probable cause to arrest him for criminal trespass. A person commits the crime of

---

[4] The State does not contend on appeal that Deputy McGrath had probable cause to detain or arrest Keza for making a false or misleading statement to a public servant, a gross misdemeanor under RCW 9A.76.175. We therefore do not address this issue.

trespass when he enters the premises of another without express or implied permission. RCW 9A.52.070, .080. Under RCW 9A.52.090(2), it is a defense to the crime of trespass if the premises are open to the public and the defendant was complying with all lawful conditions imposed on access to the premises. It is also a defense if the defendant reasonably believed the owner of the premises would have licensed him to remain there. RCW 9A.52.090(3).

As the trial court found, "the area where Mr. Keza and his companion were located was a sidewalk that was open and accessible to the public." Keza presented evidence that there were no visible restrictions on sitting on the sidewalk. He also presented evidence that some of the businesses in the strip mall were open at the time of his arrest. Although there was a "No Trespass" sign in the restaurant window, the trial court found that there was nothing to suggest the sign extended to the public sidewalk outside that business. It found that "where there is an open and unsecured outlet on the outside of the building that the observer wants to use for the purpose of charging their cell phone," it made it less likely that Keza was there without permission. The State has not challenged this finding on appeal.

The case on which the State relies, State v. Bellerouche, 129 Wn. App. 912, 120 P.3d 971 (2005), is clearly distinguishable. In that case, a Federal Way apartment complex contacted the police to assist it in removing trespassers from its property. Id. at 913. Bellarouche had been given, on two occasions, permanent notices of trespass ordering him to stay away from the complex. Id. at 913-14. The manager notified police that three high school students, including Bellerouche,

were trespassing. Id. Bellerouche was arrested, charged, and convicted of second degree criminal trespass. Id. at 915. We affirmed his conviction on appeal.

But Bellerouche, unlike Keza, had prior notice that he was not permitted to be present on the apartment's premises. And Keza, unlike Bellerouche, was sitting on a public sidewalk. There was no indication that anyone from the strip mall or the restaurant had called the police to complain about trespassers or that anyone had asked the police to remove Keza or his companion. And there was no sign indicating that sitting on the public sidewalk or using the electrical outlet next to the restaurant was forbidden. Bellerouche does not support the State's argument here.

Deputy McGrath had insufficient information from which to suspect or conclude that Keza lacked permission to sit on the public sidewalk. The facts known to Deputy McGrath at the time of the arrest were insufficient to lead a reasonable officer to conclude that Keza had committed the crime of trespass.

Nor did Deputy McGrath have reasonable suspicion or probable cause to arrest Keza and his companion for theft of electricity. Under RCW 9A.56.020(1)(a), theft requires proof that a defendant wrongfully obtained or exerted unauthorized control over the property or services of another. While electricity is property that can be stolen as "services of another," under RCW 9A.56.010(10), Deputy McGrath had no basis for concluding that Keza's use of an unsecured electrical outlet in a strip mall to charge a cell phone was wrongful or unauthorized. Deputy McGrath had no evidence to whom the electrical outlet belonged or from whom Keza was purportedly taking electricity. Although the State seems to assume the

- 11 -

outlet belonged to the owner of the closed restaurant, there is nothing to suggest Deputy McGrath had any reason to believe this to be true. And Deputy McGrath certainly did not indicate that he suspected Keza of stealing electricity and did not base the arrest on that alleged crime.

Based on the record before us, we conclude that the State lacked both reasonable suspicion to detain Keza and probable cause to arrest him for the two crimes it identified on appeal. The search incident to his arrest was therefore unlawful.

Although we affirm on different grounds, the trial court properly suppressed the evidence and dismissed the charge against Keza. See State v. Morales, 173 Wn.2d 560, 580, 269 P.3d 263 (2012) (our court has duty to affirm if judgment of trial court can be sustained on any ground, whether based on the ground stated by the trial court or not).

WE CONCUR:

_Andrus, J._

_Bowman, J._

_Smith, J._